[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 16, 2003
THOMAS  K. KAHN
CLERK**

No. 02-15350

_____

D. C. Docket No. 00-07195 CV-JAL

UPTOWN PAWN & JEWELRY, INC.,
a Florida Corporation,

Plaintiff-Appellant,

versus

CITY OF HOLLYWOOD,
a Florida Municipal Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 16, 2003)**

Before ANDERSON and COX, Circuit Judges, and  NANGLE *, District Judge.

PER CURIAM:

_____

*Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri,
sitting by designation.

Uptown Pawn & Jewelry, Inc. ("Uptown") appeals the district court's grant of summary judgment in favor of the City of Hollywood, Florida ("the City"), thereby upholding the City's policy of not allowing pawn shops, among other types of businesses, to advertise on bus benches on the City's rights-of-way.[1] In its motion for summary judgment, Uptown asserted that the City's policy of not allowing pawn shops to advertise on bus benches violated Uptown's First Amendment rights.[2] The City counter-filed a motion for summary judgment urging that as a nonpublic forum, the City's policy survived the lower level of scrutiny applied to such forums. The district court found that the bus benches were a nonpublic forum, and thus the City's policy need only be reasonable and viewpoint neutral. The district court determined that the City's goal of raising revenue made the policy of limiting advertising space to more reputable advertisers a reasonable, and therefore constitutional, limitation on Uptown's First Amendment rights. Uptown appeals, arguing that the bus benches are a public forum or, in the alternative, that if they are not a public forum, then the City's policy is unreasonable. We affirm.

---

[1] The vendor in charge of selling the advertising space owns the bus benches, not the City. (R.1-1, Ex. A at 1.)

[2] Uptown also made a Fourteenth Amendment Equal Protection argument and asserted state law claims, but they are not issues in this appeal.

# I. BACKGROUND

The City contracts with private entities, giving them the right to place entity-owned bus benches on City rights-of-way and sell advertising space on the benches. Prior to January 2000, the City contracted with Hollywood Jaycees ("Jaycees") to have the Jaycees sell advertising space on the benches. Advertisers wishing to purchase ad space contracted with the Jaycees, but the City owned the rights to the advertising on the benches. Under this contract, the Jaycees were prohibited from selling advertisements for liquor, tobacco, X-rated movies, or massage parlors. Advertisements by pawnbrokers were permitted. (R.1-92 at 2.) In fact, for fourteen years, Uptown Pawn, a duly licensed pawnbroker, placed ads on the bus benches.

In November 1999, with the Jaycees' contract set to expire, the City issued a Request for Proposal ("RFP") for Bus Bench Advertising, seeking to replace the contract with the Jaycees. According the the RFP, the City would be entitled to an agreed percentage of the gross advertising receipts generated by the advertising. The RFP provided that the entity chosen would be authorized to sell advertising space on the benches provided that "there shall be no liquor, tobacco, X-rated movies, adult book store, massage parlor, pawn shop, tattoo parlor or check cashing advertising of any nature whatsoever placed upon the public benches." (R.1-1, Ex A. at 2.) Gateway Advertising won the contract and began administering its provisions in

3

January 2000. That same month, Uptown was precluded from purchasing bus bench advertising because of the quoted provision of the contract.

Uptown filed suit against the City seeking declaratory relief, preliminary injunctive relief, and damages. Uptown filed a motion for summary judgment; the City responded and filed a counter-motion for summary judgment. The district court determined that the bus benches are not a public forum, therefore regulation of speech on the benches need only be reasonable and not viewpoint discriminatory. The City argued that the justification for the decision not to allow certain types of businesses to advertise on bus benches was that the revenue the City earns is based upon advertising rates, which in turn is based upon perceived class and consumer friendliness of the businesses advertising on the benches (i.e., if advertisers perceived bus benches as a medium for advertising lower caliber businesses, then advertising rates and revenue would decline). The district court concluded that the City's concern for its revenue stream and corresponding policy limiting bus bench advertisers were reasonable. The district court also noted that the presence of numerous alternative avenues for pawnshop advertisements supports the conclusion that the City's proprietary decision to not allow pawnshop advertising is reasonable. Finally, the district court found that the City's policy was not viewpoint

discriminatory because there is no viewpoint that is being suppressed. Thus, the court denied Uptown's motion for summary judgment and granted the City's motion.

## II.  ISSUES ON APPEAL

First, we must determine whether the bus benches constitute a created public forum[3] or a nonpublic forum.  Our conclusion on that issue will determine what level of scrutiny to apply: restrictions on speech in a public forum receive strict scrutiny, whereas restrictions on nonpublic forums need only be reasonable and not viewpoint discriminatory.  Because we conclude that the bus benches are a nonpublic forum, we must then determine whether the City's policy is reasonable.  We do not engage in a viewpoint analysis because Uptown does not contend that the City's policy is viewpoint discriminatory.

We review a grant of summary judgment de novo.  *Hilburn v. Murata Elecs. N. Am., Inc.,* 181 F.3d 1220, 1225 (11th Cir.1999). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[3] Uptown concedes that the benches are not a traditional public forum.

5

III.  DISCUSSION

A.  Created Public or Nonpublic Forum

As a general rule, government ownership of property does not automatically open that property to the public.  *United States v. Kokinda*, 497 U.S. 720, 725, 110 S. Ct. 3115, 3119 (1990).  The extent to which a government may control access to government property turns on the nature of the forum.  *Id.* at 726, 110 S. Ct. at 3119. Regulation of speech activity on government property that has been traditionally open to the public, such as streets and parks, is examined under strict scrutiny.  *Id.* at 730, 110 S. Ct. at 3121.  Similarly, regulation of speech on property that the government has expressly dedicated to speech activity (a created public forum) is also examined under strict scrutiny.  *Id.*  But regulation of speech activity where the government has not dedicated the property to First Amendment activity (a nonpublic forum) is examined for reasonableness and viewpoint neutrality (nonpublic forum scrutiny). *Id.*

The Supreme Court has held that the government does not create a public forum by permitting limited discourse; instead, the government must intentionally open a nontraditional forum for public discourse.  *Id.*, quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S. Ct. 3439, 3449 (1985). To ascertain whether the government intended to designate a place not traditionally

6

open to assembly and debate as a public forum, the Court has examined factors such as the policy and practice of the government, the nature of the property, and its compatibility with expressive activity. *Cornelius*, 473 U.S. at 800, 105 S. Ct. at 3447-48. However, the Court has stated that it is a "long-settled principle" that when the government acts in its position as a proprietor to manage its internal operations, as opposed to using its power as a regulator or lawmaker, those governmental actions are subject to a lower level of First Amendment scrutiny. *Kokinda*, 497 U.S. at 725, 110 S. Ct. at 3119.

With these fundamentals of public forum law in mind, Uptown contends that the bus benches are a created public forum. Uptown argues that it was error for the district court to rely on *Lehman v. City of Shaker Heights*, 418 U.S. 298, 94 S. Ct. 2714 (1974) in declaring that the bus benches are not a created public forum.

In *Lehman*, the issue before the Court was whether the city could ban political advertisements on city-owned buses while allowing commercial advertisements. The Court concluded that the city had not created a public forum so much as it had created a commercial venture in the sale of advertising. *Id.* at 303, 94 S. Ct. at 2717. Thus, the appropriate standard of review was to ask if the state action was reasonable.[4] *Id.*

---

[4] The *Lehman* court actually described the standard of review as asking if the state action was "arbitrary, capricious, or invidious." 418 U.S. at 303, 94 S. Ct. at 2717. However, since *Lehman*, the Court has referred to the standard of review as "reasonableness" review. *See, e.g.,*

The Court determined that because there were "reasonable legislative objectives advanced by the city in a proprietary capacity," ("to minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience"), there was no First Amendment violation. *Id.* at 304, 94 S. Ct. at 2718.

Uptown contends that the district court understood *Lehman* to mean that a municipality's intent to raise money is, *ipso facto*, evidence that it did not intend to create a public forum. We disagree. The district court considered the fact that the City's purpose in creating the bus bench forum was to generate revenue, a fact which Uptown concedes. (Uptown Br. at 11.) Hence, the court concluded that the City was acting in a proprietary capacity when it decided to limit the businesses that could advertise on the benches. But the district court also considered the City's prior policy of not allowing advertisements for liquor, tobacco, X-rated movies, adult bookstores, and massage parlors. We agree with the district court that the previous policy of limiting advertisers also evidences an intent by the City to raise the most funds possible and not an intent to create a public forum open to all advertisers.

---

*Conrelius*, 473 U.S. at 800, 105 S. Ct. at 3448 ("Access to a nonpublic forum . . . can be restricted as long as the restrictions are 'reasonable . . .'"); *Kokinda*, 497 U.S. at 727, 110 S. Ct. at 3119-20 ("regulation of speech activity where the Government has not dedicated its property to First Amendment activity is examined only for reasonableness."). For ease of discussion, we refer to the standard of review as reasonableness.

Uptown also contends that the exclusion of categories of speech does not create a nonpublic forum, and that instead we must examine the *nature* of the excluded categories of speech to determine whether the government intended to create a designated public forum or a nonpublic forum. Uptown directs us to cases where other circuits have found an advertising medium to be a public forum because in those cases the cities allowed both commercial and political advertising. Uptown claims that because the City's contract does not distinguish between categories of speech, allowing both commercial and political advertising, then this evidences an intent to create a public forum. We disagree. As the district court noted, the City has always had a policy of excluding certain categories of advertising from its bus benches. Contrary to Uptown's argument, the City has never accepted "virtually all types of advertising" the way that the cities in the cases Uptown cites had done.

Finally, Uptown argues that the fact that the intended purpose for the bus benches is consistent with the use to which Uptown wants to put the forum, evidences the existence of a public forum. In conjunction with this argument, Uptown notes that it had advertised on the bus benches for 14 years without incident as further evidence that the nature of the forum of bus benches is compatible with the use to which Uptown wants to put the forum. Uptown's argument is not persuasive. While the bus benches do have an intended purpose of carrying advertising, they also have

9

an intended purpose of generating revenue. If the City perceives that allowing certain kinds of advertising will discourage "higher caliber" advertisers from buying bus bench ads and thereby reduce revenue, then allowing "low caliber" advertising would be inconsistent with the City's intended use of the bus benches: to generate as much revenue as possible. The fact that pawn shops had previously been allowed to advertise on the bus benches does not change our conclusion. The bus benches are a commercial venture, and as such, "[i]n much the same way that a newspaper or periodical, or even a radio or television station, need not accept every proffer of advertising from the general public, a city . . . has discretion to develop and make reasonable choices concerning the type of advertising that may be displayed . . . ." *Lehman*, 418 U.S. at 303, 94 S. Ct. at 2717. In fact, the City is doing what this circuit has authorized in a nonpublic forum: making distinctions based upon content in order to preserve the bus benches for the intended use of generating revenue. *See ISKCON Miami, Inc., v. Metropolitan Dade County*, 147 F.3d 1282, 1287 n.5 (11th Cir. 1998).

B. Nonpublic Forum Review

Having concluded that the City's bus benches are a nonpublic forum, we must now determine whether the City's policy is reasonable. *Kokinda*, 497 U.S. at 730, 110 S. Ct. at 3121. Control over access to a nonpublic forum can be based on speaker identity or subject matter so long as the distinctions drawn by the City are reasonable

10

in light of the purpose served by the forum and are viewpoint neutral. *Id.* at 730, 110 S. Ct. at 3121-22. The City's decision to restrict access to the bus benches need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation. *Id.* at 730, 110 S. Ct. at 3122.

Uptown first attacks the reasonableness of the City's policy by arguing that there is no support for it in the record. Uptown urges that the City must point to evidence in the record to support the reasonableness of its policy and that the City's failure to do so precludes judgment in the City's favor. In support of its argument, Uptown directs us to *Searcey v. Harris*, 888 F.2d 1314 (11th Cir. 1989), a First Amendment case where this court stated that it could not "*infer* the reasonableness of a regulation from a vacant record." *Id.* at 1322 (emphasis in original). In that case, the school board advanced no argument, and hence pointed to no evidence in the record, to explain why the limitation it had imposed on the nonpublic forum of a school's career day event was reasonable. *Id.* at 1321. *Searcy* did not, however, hold that reasonableness *must* be supported by record evidence. To the contrary, the court implied that if the reasonableness of the school board's policy was "intuitively obvious," then perhaps it could withstand reasonableness scrutiny. *Id.* ("It is not intuitively obvious that individuals who are no longer affiliated with a career would [present less effective career information or be less effective role models]; nor is it

11

obvious that such an individual would be more likely [to abuse the Career Day forum].") More definitively, the Supreme Court has stated that "common sense . . . is sufficient in this Court to uphold a regulation under reasonableness review." *Kokinda*, 497 U.S. at 734-35, 110 S. Ct. at 3124. Hence, we need only ask whether it is intuitively obvious or common sensical that the City's limitation on bus bench advertising is reasonable.

Turning to the merits, Uptown contends that the City's policy is unreasonable because the City would allow Uptown to build its own benches and advertise on City rights-of-way, but Uptown cannot advertise on the bus benches managed by Gateway. Uptown asserts that the logic of preserving the higher caliber bus bench advertising must fail in light of the fact that Uptown could advertise on its own neighboring bus bench. Uptown focuses on the fact that the City's motion for summary judgment stated that the contract with Gateway is a non-exclusive agreement and that "UPTOWN could put up its own bus benches on the City's rights-of-way, if they so choose, provided they meet with all city ordinance requirements. Similarly, UPTOWN can contract with any other bus bench company to place its advertising on city rights-of-way." (R.2-58 at 4.) If it be true that Uptown could place its own

benches on city rights-of-way,[5] it does not follow that the City's limitation on who may advertise on Gateway bus benches in an effort to protect the revenue stream and "market those businesses which [the City] is most proud of, and which are thought to be consistent with its long-term economic health" is unreasonable. (City Br. at 32.) In point of fact, we find that common sense supports the idea that it is reasonable for the City to limit "less desirable" businesses' access to bus bench advertising in hopes that the limitation will encourage "more desirable" advertisers.

Furthermore, the presence of numerous alternative channels for pawnshop advertisements also supports the conclusion that the City's proprietary decision to limit advertising on bus benches is reasonable. *See Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 53-54, 103 S. Ct. 948, 959 (1983) ("[T]he reasonableness of the limitations on PLEA's access to the school mail system is also supported by the substantial alternative channels that remain open for union-teacher communication to take place. . . . The variety and type of alternative modes of access present here compare favorably with those in other nonpublic forum cases where we have upheld restrictions on access.") Uptown has made no showing that it is

---

[5] We do not mean to say that Uptown could, in fact, place benches on City rights-of-way. We have no evidence that the City would permit Uptown to place the benches on City rights-of-way or that there are other bus bench companies with which Uptown could advertise, nor do we know how City ordinances might circumscribe Uptown's ability to place benches on City rights-of-way.

13

prevented from advertising using other mediums of communication such as newspaper, radio, television, etc.

Finally, Uptown contends that if the City's rationale is to limit the access of "less desirable" businesses to bus bench advertising, then there are still many classes of "lower caliber" businesses who could have access to the bus benches. While Uptown may be correct, the Supreme Court has instructed that the government's limitation on speech in a nonpublic forum "need only be *reasonable*," not "the most reasonable" or "the only reasonable limitation," just *reasonable. Kokinda*, 497 U.S. at 730, 110 S. Ct. at 3122. The City's limitation satisfies this requirement.

We need not discuss the viewpoint neutrality of the City's limitation because Uptown does not contend that the City's policy is not viewpoint neutral.

## IV. CONCLUSION

The City has always precluded certain businesses from being able to advertise on City bus benches. This preclusion evidences an intent, not to create a public forum, but to act in a proprietary capacity to manage a commercial venture. Hence, the bus benches are a nonpublic forum. As such, any limitations the City places on freedom of expression in the nonpublic forum need only be reasonable in light of the purpose served by the forum and viewpoint neutral. We find that because the undisputed purpose of the forum is to earn revenue, and because the City fears that

14

allowing businesses such as pawnshops to advertise on the bus benches might inhibit "more desirable" businesses from buying advertising on the benches, and thus negatively affect revenue, the City's limitation is reasonable. Because we find the limitation reasonable and because Uptown does not contend on appeal that the limitation is viewpoint discriminatory, we hold that the City's limitation survives nonpublic forum scrutiny and is constitutional. Thus, the district court properly granted the City's motion for summary judgment.

AFFIRMED.