District Court for Northern Carroll County
No. 98-239

THE STATE OF NEW HAMPSHIRE

v.

WAYNE MCLELLAN

December 30, 1999

*Philip T. McLaughlin*, attorney general (*N. William Delker*, assistant attorney general, on the brief and orally), for the State.

*Cooper, Deans & Cargill, P.A.*, of North Conway (*Randall F. Cooper*, on the brief and orally), for the defendant.

BROCK, C.J. The State appeals a decision of the District Court for Northern Carroll County (*Albee*, J.) granting the motion of the defendant, Wayne McLellan, to suppress evidence obtained as a result of video surveillance. We reverse and remand.

The following facts were either stipulated to by the parties or found by the district court. On or about December 6, 1996, Steven Kelly, principal of Conway Elementary School, notified Sergeant Jeff Dicey of the Conway Police Department of several thefts from classrooms in the sch ol. Kelly informed Dicey that he suspected the defendant, who worked as a custodian at the school from 4:00 or 4:30 a.m. until 12:00 or 1:30 p.m.

On January 26, 1997, Dicey installed a hidden video camera in a classroom in which multiple thefts had previously occurred. The defendant's position as head custodian gave him reason to be throughout the school building, including the targeted classroom, to check the work of other custodians. Dicey set the camera, which recorded visual images only and did not record sound, to begin recording at 4:00 a.m. and to stop at 7:30 a.m. when the teacher arrived in the classroom. He also placed an envelope containing $26.91 in the teacher's desk drawer.

On January 29, 1997, Kelly notified Dicey that two dollars were missing from the envelope. That day, Dicey removed the videotape from the camera and viewed it the following day. It allegedly showed that the lights came on in the classroom at 5:24 a.m. and that a man walked in and removed something from the envelope in the teacher's desk. Kelly allegedly identified the man in the video as the defendant. While Dicey was viewing the videotape, Kelly called him and told him that another dollar had been removed from the envelope the next night.

Subsequently, Dicey met with the defendant at the school. He told the defendant that he was investigating a theft, and he allegedly informed him that he was not in custody and did not have to speak with him. Dicey did not tell the defendant that he was the chief suspect. Dicey showed the defendant pictures he retrieved from the videotape, and the defendant allegedly made some inculpatory statements.

The defendant was charged with two misdemeanor counts of theft by unauthorized taking. He moved to suppress evidence obtained as a result of the video surveillance, asserting that it constituted an unconstitutional warrantless search in violation of Part I, Article 19 of the New Hampshire Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. The district court granted the defendant's motion to suppress.

On appeal, the State argues that the defendant cannot challenge the video surveillance under either the State or Federal Constitutions, and that the video surveillance of the classroom did not constitute a·search within the meaning of either constitution. We address the State constitutional claim first. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983).

The defendant argues that the automatic standing doctrine provides him with standing to challenge the video surveillance as an unlawful search under Part I, Article 19 of the New Hampshire Constitution. This doctrine interprets Part I, Article 19 to require that "automatic standing be afforded to all persons charged with crimes in which their possession of any item or thing is an element." *State v. Alosa*, 137 N.H. 33, 36, 623 A.2d 218, 221 (1993).

■ "[A] basic premise of the [automatic standing] rule is that the individual have a possessory interest in the article or thing to be searched or seized." *State v. Paige*, 136 N.H. 208, 210, 612 A.2d 1331, 1332 (1992). Absent any possessory interest in the classroom, desk, or money prior to the time of the offending act, the defendant will not be afforded automatic standing. *See id.* at 211, 612 A.2d at 1332. Because the defendant had no such possessory interest, we conclude that the trial court erred in affording him automatic standing.

The defendant next argues that he has capacity to challenge the video surveillance under the Fourth Amendment to the United States Constitution. The "capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Minnesota v. Carter*, 119 S. Ct. 469, 473 (1998) (quotation and ellipsis omitted). Therefore, "the extent to which the Fourth Amendment protects people may depend upon where those people are." *Id.*

> [I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one which has a source outside of the Fourth Amendment, either by reference to

concepts of real or personal property law or to understandings that are recognized and permitted by society.

*Id.* at 472 (quotation omitted).

"The employee's expectation of privacy must be assessed in the context of the employment relation." *O'Connor v. Ortega,* 480 U.S. 709, 717 (1987). "[A] reasonable expectation of privacy . . . exist[s] in an area given over to an employee's exclusive use." *United States v. Taketa,* 923 F.2d 665, 671 (9th Cir. 1991) (quotation and brackets omitted); *cf. O'Connor,* 480 U.S. at 718 (reasonable expectation of privacy in desk and file cabinets that were not shared with any other employees). "By contrast, the less private a work area — and the less control a defendant has over that work area — the less likely standing is to be found." *United States v. Hamdan,* 891 F. Supp. 88, 95 (E.D.N.Y. 1995), *aff'd,* 101 F.3d 686 (2d Cir. 1996). In fact, an office "may be so open to fellow employees or the public that no expectation of privacy is reasonable." *O'Connor,* 480 U.S. at 718.

The classroom in this case was not an area over which the defendant enjoyed exclusive use and control. His job required him to enter it only to supervise the work of another custodian. Furthermore, the classroom was an area that was open to students and school staff. *See id.* at 717-18. The defendant emphasizes that he was the only person who had access to the classroom during the time the video camera was set to record. This, however, does not alter the fact that the classroom was not his personal space. *See Martinez v. Nygaard,* 831 F.2d 822, 826 (9th Cir. 1987). Accordingly, we conclude that the defendant did not have a reasonable expectation of privacy in the classroom.

We reject the defendant's argument that *Taketa* supports his claim to an expectation of privacy in the context of video surveillance. "Given the great variety of work environments . . . , the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis," *O'Connor,* 480 U.S. at 718, and *Taketa* is distinguishable from the present case.

In *Taketa,* the Ninth Circuit held that "a person filmed by government agents searching for evidence of a crime, in a colleague's personal office in his place of business, has sufficient standing, by virtue of his appearance on the tape, to contest its admission on fourth amendment grounds." *Taketa,* 923 F.2d at 677. The defendant in *Taketa* was a drug enforcement administration (DEA) agent, who was filmed while in the personal office of a colleague in a DEA field office. *Id.* The field office consisted of a large office with two smaller offices attached. *Id.* at 668. The

colleague had exclusive use of his office, and the defendant used it for illegal activities in conspiracy with the colleague. *Id.* at 671. By contrast, the area under video surveillance in the present case was not a personal office. It was a school classroom to which many people had access. Therefore, we find *Taketa* to be inapposite.

Finally, we reject the defendant's argument that RSA 644:9 (1996) supports his claim that he had a reasonable expectation of privacy in the classroom. RSA 644:9 provides:

> I. A person is guilty of a misdemeanor if such person unlawfully and without the consent of the persons entitled to privacy therein, installs or uses:
> (a) In any private place, any device for observing, photographing, recording, amplifying or broadcasting sounds or events in such place . . . .

> II. As used in this section, "private place" means a place where one may reasonably expect to be safe from surveillance but does not include a place to which the public or a substantial group thereof has access.

■ "On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Farrow,* 140 N.H. 473, 474, 667 A.2d 1029, 1031 (1995) (quotation omitted). The classroom was not the defendant's personal space. It was in a school, and many people had access to it. Accordingly, we conclude that in this case, the classroom was not a place where the defendant could "reasonably expect to be safe from surveillance," and, therefore, was not a "private place" within the meaning of RSA 644:9, II.

■ The only arguments that the defendant made for standing under the State Constitution were based on the automatic standing doctrine and the "reasonable expectation of privacy" test. He has asked that we adopt the "reasonable expectation of privacy" test to determine standing under the State Constitution. Our analysis of the defendant's federal constitutional claim required that we apply this standard. Because we are satisfied that even under the federal standard, the defendant would not have standing, "application of [that standard] would not alter the outcome of this case. Accordingly, we postpone consideration of the reasonable expectation of privacy test until another day." *State v. Pinkham,* 141 N.H. 188, 189-90, 679 A.2d 589, 590 (1996) (citation omitted); *see State v. Valenzuela,* 130 N.H. 175, 181, 536 A.2d 1252, 1256-57 (1987), *cert. denied,* 485 U.S. 1008 (1988).

Finally, with respect to the State's second argument on appeal, because we conclude that the defendant lacks standing under the State Constitution and had no reasonable expectation of privacy under the Federal Constitution, we need not decide whether the video surveillance constituted a "search."

*Reversed and remanded.*

All concurred.