STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Brian Harold DUCHOW,
Defendant-Appellant-Cross Petitioner.

Supreme Court

*No. 2005AP2175–CR. Oral argument December 13, 2007.
—Decided June 10, 2008.*

2008 WI 57

(Also reported in 749 N.W.2d 913.)

1

For the plaintiff-respondent-petitioner the cause was argued by *David J. Becker,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the defendant-appellant-cross petitioner there were briefs and oral argument by *Melinda A. Swartz,* assistant state public defender.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review an unpublished court of appeals decision[1] reversing a circuit court's[2] denial of Brian Duchow's (Duchow) motion to suppress threatening statements he directed to a disabled child aboard a public school bus. The child, Jacob M., surreptitiously recorded Duchow's statements using a voice-activated tape recorder that his parents placed in his backpack. The circuit court concluded that the tape-recorded statements were not "oral communication" as defined by the Electronic Surveillance Control Law, Wis. Stat. §§ 968.27–.33 (2005–06),[3] and accordingly, the strictures of the Law did not operate to prevent use of the statements. In contrast, the court of appeals concluded that the statements were oral communication and that the oral communication was lawfully intercepted. However, the court of appeals also concluded that, notwithstanding the statements' lawful interception, the statements could not be admitted at trial because they were

[1] *State v. Duchow,* 2007 WI App 162, 303 Wis. 2d 744, 735 N.W.2d 192.

[2] The Honorable Michael B. Brennan of Milwaukee County presided.

[3] All further references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise noted.

not intercepted in accord with the "under color of law" requirement of Wis. Stat. § 968.29(3)(b). *State v. Duchow*, 2007 WI App 162, ¶ 42, 303 Wis. 2d 744, 735 N.W.2d 192.

¶ 2. The dispositive issue in this appeal is whether Duchow's tape-recorded statements were "oral communication" as defined in Wis. Stat. § 968.27(12), a part of the Electronic Surveillance Control Law. We conclude that the statements were not "oral communication" because Duchow had no reasonable expectation of privacy in the statements. Because the statements are not "oral communication," they do not fall within the scope of the Electronic Surveillance Control Law; and therefore, the Electronic Surveillance Control Law provides no basis for suppression.[4] Accordingly, we reverse the decision of the court of appeals.

## I. BACKGROUND

¶ 3. Duchow, a former public school bus driver,[5] was charged in a criminal complaint with one count of physical abuse of a child, contrary to Wis. Stat. § 948.03(2)(b), and one count of disorderly conduct, contrary to Wis. Stat. § 947.01, as a result of his alleged statements and acts while driving Jacob M. to and from school on April 29, 2003.

¶ 4. Jacob, who suffers from Downs Syndrome and Attention Deficit Disorder, was nine years old at

---

[4] We do not address whether the Electronic Surveillance Control Law permits vicarious consent by a parent or whether the statements were recorded "under color of law."

[5] Duchow's employer suspended him from duty after the State filed the complaint against him. The circuit court judge subsequently ordered that, while the case is pending, Duchow is prohibited from driving any bus with children aboard.

the time the complaint was filed. Each morning, he was the first child to board the school bus driven by Duchow.

¶ 5. In the spring of 2003, Jacob's parents became concerned about recent adverse changes in Jacob's behavior. Jacob had allegedly spit at Duchow.[6] In addition, Jacob's parents had observed him punch his toys, "kick at" the family dog and resist boarding the school bus in the morning. Moreover, Jacob's teacher relayed to his parents that Jacob had cried at school when it was time for him to board the bus to go home. Previously, Jacob had not exhibited such behavior.

¶ 6. Jacob's parents suspected something was amiss on the school bus. They feared Jacob's bus driver, whom they knew was Duchow, might be verbally or physically abusing him. As a result of their concern, Jacob's parents placed a voice-activated recorder in Jacob's backpack before he boarded the school bus on April 29, 2003. Jacob's parents listened to the tape when Jacob returned home from school that day. The tape recorded Duchow making the following statements to Jacob:

- "Stop before I beat the living hell out of you."

- "You'd better get your damn legs in now."

- "Do I have to tape your mouth shut because you know I will."

- "Do you want another one of these?"

- "I'm gonna slap the hell out of you."

- "Do you want me to come back there and smack you?"

---

[6] Duchow had filed written complaints that Jacob had spit at him during bus rides.

The sound of what Jacob's parents believed to be a slap was also recorded.

¶ 7. Jacob's parents played the tape before a Milwaukee Police Officer, who investigated the matter. The officer visited Duchow's home and conducted brief interviews with him on three occasions. According to the complaint, during these interviews, Duchow admitted that he had threatened Jacob. Duchow described the threats he had made as threatening to have Jacob removed from the bus, threatening to slap Jacob, and threatening to tape Jacob's mouth shut. Duchow further admitted that on April 29, 2003 he slapped Jacob twice in the face with an open hand.

¶ 8. After the State filed the information against Duchow, Duchow moved to suppress the contents of the tape recording on grounds that the recording was made in violation of the Electronic Surveillance Control Law. The circuit court initially granted Duchow's motion to suppress, but later reversed that decision when it revisited the issue as a result of the State's motion for reconsideration. On reconsideration, the circuit court concluded that Duchow's tape-recorded statements were not "oral communication" within the meaning of the Electronic Surveillance Control Law; and therefore, it held against Duchow.

¶ 9. Duchow pled guilty to physical abuse of a child and the State dismissed the disorderly conduct charge. Judgment was entered convicting Duchow of physical abuse of a child.

¶ 10. Duchow appealed, and the court of appeals reversed the circuit court's order denying Duchow's motion to suppress his tape-recorded statements. The court of appeals concluded that the statements had been lawfully intercepted, but they could not be admitted at trial because they were not intercepted "under

9

color of law" as Wis. Stat. § 968.29(3)(b) requires. *Duchow,* 303 Wis. 2d 744, ¶ 42. The State petitioned for review, which we granted.

## II. DISCUSSION

### A. Standard of Review

¶ 11. This case requires us to interpret and to apply portions of the Electronic Surveillance Control Law. We review questions of statutory interpretation and application independently, but benefiting from the decisions of the court of appeals and the circuit court. *Marder v. Bd. of Regents of the Univ. of Wis. Sys.,* 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110.

### B. Oral Communication

#### 1. Wisconsin Stat. § 968.27(12)

¶ 12. Resolution of the question of whether Duchow's tape-recorded statements constitute "oral communication" under the facts of this case requires us to interpret and to apply Wis. Stat. § 968.27(12), a provision of the Electronic Surveillance Control Law. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). If the words of the statute exhibit a "plain, clear statutory meaning," without ambiguity, the statute is applied according to the plain meaning of the

10

statutory terms. *Id.*, ¶ 46 (quoting *Bruno v. Milwaukee County*, 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656). However, if a statute is "capable of being understood by reasonably well-informed persons in two or more senses[,]" then the statute is ambiguous, and we may consult extrinsic sources to discern its meaning. *Id.*, at ¶¶ 47–48, 50.

¶ 13. We begin our discussion with the plain language of Wis. Stat. § 968.27(12), which defines "oral communication":

> "Oral communication" means any oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation. "Oral communication" does not include any electronic communication.

We note that the statute does not include every oral statement, but rather, it is restricted to those made in certain circumstances.

¶ 14. The parties offer competing interpretations of Wis. Stat. § 968.27(12). On the one hand, Duchow argues that an "oral communication" is a statement uttered under circumstances in which the speaker has a reasonable expectation that the statement will not be *intercepted*. On the other hand, the State argues that an "oral communication" is a statement uttered under circumstances in which the speaker has a reasonable expectation of *privacy*. In the context of the Electronic Surveillance Control Law, which limits the interception and use of oral statements, Duchow's interpretation and the State's interpretation are both reasonable. When comparing wire communication with alleged oral communication, without the competing interpretation asserted by Duchow, we have employed the State's

11

interpretation that an oral communication is one made under circumstances in which the speaker maintains a reasonable expectation of *privacy. State v. Smith,* 149 Wis. 2d 89, 95 n.4, 438 N.W.2d 571 (1989). Yet, from the face of the statute, one could reasonably argue that it is unclear whether the legislature intended to codify the "reasonable-expectation-of-privacy" test. The statute's ambiguity in this respect permits us to consult extrinsic sources. *Kalal,* 271 Wis. 2d 633, ¶¶ 47–48.

¶ 15. Extrinsic sources include legislative history. *Id.* The drafting records of the Electronic Surveillance Control Law state that the law "represents Wisconsin implementation of the electronic surveillance portion of [Title III]," the Omnibus Crime Control and Safe Streets Act of 1968.[7] Drafting File for ch. 427, Laws of 1969, *Analysis by the Legislative Reference Bureau* of 1969 A.B. 860, Legislative Reference Bureau, Madison, Wis. Although the legislative history of the Electronic Surveillance Control Law is silent on whether the definition of "oral communication" was meant to incorporate the speaker's "reasonable expectation of privacy," the legislative history of Title III provides guidance. *State v. House,* 2007 WI 79, ¶ 14, 302 Wis. 2d 1, 734 N.W.2d 140 (stating that because the Electronic Surveillance Control Law is "patterned after Title III[, our] interpretation . . . benefits from the legislative history and intent of Title III"). Our interpretation is assisted as well by the federal decisions that have considered Title III. *State v. Gilmore,* 201 Wis. 2d 820, 830, 549 N.W.2d 401 (1996) (recognizing that in interpreting the Electronic Surveillance Control Law, we may look to federal decisions interpreting Title III).

---

[7] The federal counterpart of Wisconsin's Electronic Surveillance Control Law is found in 18 U.S.C. § 2510 et seq.

¶ 16. The legislative history of Title III indicates that Congress intended the definition of "oral communication" in Title III, which reads nearly identically to the definition contained in the Electronic Surveillance Control Law,[8] to incorporate the "reasonable expectation of privacy test" introduced in *Katz v. United States,* 389 U.S. 347 (1967). S. Rep. No. 90–1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2113, 2153, 2178 ("Title III was drafted to ... conform with *Katz* ... .").[9] Accordingly, nearly all of the federal circuit courts that have considered the definition of "oral communication" in Title III have concluded that it requires the speaker to have a reasonable, as well as a subjective, expectation of privacy. *Kee v. City of Rowlett, Texas,* 247 F.3d 206, 211 n.8 (5th Cir. 2001) (citing *id.*); *United States v. Longoria,* 177 F.3d 1179, 1181 (10th Cir. 1999) (citing same); *In re John Doe Trader Number One,* 894 F.2d 240, 242 (7th Cir. 1990) (citing same); *United States v. McIntyre,* 582 F.2d 1221, 1223 (9th Cir. 1978) (citing same).

¶ 17. Indeed, it appears that only the Sixth,[10] Eighth[11] and Eleventh[12] Circuits have interpreted "oral

[8] Title III defines "oral communication" as follows: " '[O]ral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication[.]" 18 U.S.C. § 2510(2).

[9] Specifically, the legislative history states that the definition of oral communication "is intended to reflect existing law," and then cites *Katz v. United States,* 389 U.S. 347 (1967). S. Rep. No. 90–1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2178.

[10] *Boddie v. Am. Broad. Cos.,* 731 F.2d 333, 339 (6th Cir. 1984).

[11] *Angel v. Williams,* 12 F.3d 786, 789–90 (8th Cir. 1993).

[12] *Walker v. Darby,* 911 F.2d 1573, 1579 (11th Cir. 1990).

13

communication" in Title III as Duchow urges us to define it, i.e., that the speaker have merely a reasonable expectation of non-interception. However, more recently, the Eighth and Eleventh Circuits have modified their views. For example, although the Eighth and Eleventh Circuits once defined "oral communication" as involving a reasonable expectation of non-interception in *Angel v. Williams*, 12 F.3d 786, 789–90 (8th Cir. 1993) and in *Walker v. Darby*, 911 F.2d 1573, 1579 (11th Cir. 1990), respectively, those circuits have more recently eschewed the "reasonable-expectation-of-non-interception" standard in favor the "reasonable-expectation-of-privacy" standard that a majority of the federal circuit courts employ. *United States v. Peoples*, 250 F.3d 630 (8th Cir. 2001); *United States v. McKinnon*, 985 F.2d 525 (11th Cir. 1993).[13]

¶ 18. We employed reasoning from federal decisions in the past in interpreting the Electronic Surveillance Control Law. In *Smith*, 149 Wis. 2d at 95 n.4, we relied on federal law in deciding that the term, "oral communication," in Wis. Stat. § 968.27(12) is to be understood as applying to those statements made only under circumstances in which the speaker has a reasonable expectation of *privacy* (concluding that § 968.27(12) is a "particularized statutory codification of the [F]ourth [A]mendment right.").[14] In *Smith*, we

[13] Neither *United States v. Peoples*, 250 F.3d 630 (8th Cir. 2001) nor *United States v. McKinnon*, 985 F.2d 525 (11th Cir. 1993) explains the shift in analysis or the difference between the two standards.

[14] Later in *State v. Smith*, 149 Wis. 2d 89, 438 N.W.2d 571 (1989), we explained that in order to protect a telephone conversation from interception, the expectation of privacy in the conversation must be reasonable under the Fourth Amendment standards set out in *Katz. Smith*, 149 Wis. 2d at 104. *Katz*

14

held that the communication at issue, a cordless telephone conversation, did not constitute an "oral communication" as defined by the Electronic Surveillance Control Law because "objectively there could be no reasonable expectation of *privacy*" in the speech. *Id.* at 105 (emphasis added).

¶ 19. The legislative history of the Electronic Surveillance Control Law expressly states that the legislature intended the Electronic Surveillance Control Law to effect the state "implementation" of Title III. The Electronic Surveillance Control Law and Title III define "oral communication" using nearly identical language, which Congress intended to "reflect" the law as set out in *Katz*. *Katz* explained the "reasonable-

---

held that communications receive Fourth Amendment protection when the speaker has an expectation of privacy that society is willing to recognize as reasonable. *Katz*, 389 U.S. at 361 (Harlan, J., concurring).

We rely on *Katz* as authority for our decisions relating to Wisconsin law. In *Katz*, the United States Supreme Court applied the protections of the Fourth Amendment to intercepted communications. *Katz*, 389 U.S. at 361. Because the Fourth Amendment and the Wisconsin Constitution's analogous provision, Article I § 11, contain nearly identical language (*see infra*, notes 16 and 17), we generally interpret Article I § 11 of the state constitution in accord with the Supreme Court's interpretation of the Fourth Amendment. *See, e.g., State v. Guzman*, 166 Wis. 2d 577, 586–87, 480 N.W.2d 446 (1992) ("We have consistently and routinely conformed the law of search and seizure under the Wisconsin Constitution to the law developed by the United States Supreme Court under the Fourth Amendment."). We also did so in *Smith*, citing the reasoning in *Katz* as support for our decision that an expectation of privacy must be reasonable in order to receive protection under the Wisconsin Constitution. *Smith*, 149 Wis. 2d at 95 n.4.

expectation-of-privacy" standard. We also explained in *Smith* that the Electronic Surveillance Control Law incorporated the *Katz* standard of reasonableness into the definition of "oral communication." *Smith,* 149 Wis. 2d at 95 n.4. Furthermore, *Smith* is consistent with six out of seven federal circuit courts that have addressed the meaning of "oral communication" in Title III. Accordingly, we follow the overwhelming abundance of federal case law that interprets "oral communication" to incorporate a reasonable expectation of privacy, and we conclude that, in enacting Wis. Stat. § 968.27(12), the legislature did incorporate a reasonable expectation of privacy into the meaning of "oral communication."

2. Reasonable expectation of privacy

¶ 20. An individual has a reasonable expectation of privacy when he or she has both (1) an actual subjective expectation of privacy in the speech, and (2) a subjective expectation that is one that society is willing to recognize as reasonable. *State v. Bruski,* 2007 WI 25, ¶ 23, 299 Wis. 2d 177, 727 N.W.2d 503; *accord Bond v. United States,* 529 U.S. 334 (2000); *Smith v. Maryland,* 442 U.S. 735, 740 (1979); *Katz,* 389 U.S. at 361 (Harlan, J., concurring). Because the parties agree that Duchow has exhibited a subjective expectation of privacy in his speech to Jacob, we focus on whether Duchow's expectation is one society is willing to recognize as reasonable.

¶ 21. This second component reflects that protections from unreasonable searches and seizures, as described in the Fourth Amendment of the federal consti-

16

tution[15] as well as Article I, § 11 of the state constitution,[16] must be determined by reference to the " 'scope of privacy that a free people legitimately may expect.' " *State v. Whitrock,* 161 Wis. 2d 960, 973, 468 N.W.2d 696 (1991) (quoting *Rakas v. Illinois,* 439 U.S. 128, 151 (1978)). "A reasonable expectation is one [that] is constitutionally 'justifiable.' " *Id.* at 974 (citation omitted). No single factor is determinative in resolving whether one has a reasonable expectation of privacy; rather, we investigate the totality of the circumstances to resolve the question. *Id.* at 973–74.

¶ 22. Recognizing that the law requires an examination of the totality of the circumstances in determining whether an individual has a reasonable expectation of privacy, courts have identified a non-exclusive list of factors to discern whether an individual's expectation of privacy in his or her oral statements is objectively reasonable. The factors include the following: (1) the volume of the statements; (2) the proximity of other individuals to the speaker, or the potential for others to

[15] The Fourth Amendment of the U.S. Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[16] Article I, § 11 of the Wisconsin Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

overhear the speaker; (3) the potential for the communications to be reported;[17] (4) the actions taken by the speaker to ensure his or her privacy; (5) the need to employ technological enhancements for one to hear the speaker's statements; and (6) the place or location where the statements are made.[18] *See, e.g., Kee,* 247 F.3d at 213–15.

¶ 23. Duchow advances five arguments to support his contention that his subjective expectation that his statements would not be revealed is objectively reasonable. First, he asserts that it is uncommon for school bus riders to carry a tape recorder in their backpacks. Second, Duchow points out that he and Jacob were the only individuals on the bus. Third, Duchow made the statements in an enclosed vehicle, rather than in a

_____

[17] *See United States v. White,* 401 U.S. 745, 751 (1971) (concluding that the speaker assumes the risk that the hearer will relay his statements when there is reason to relay them); *United States v. Longoria,* 177 F.3d 1179, 1183 (10th Cir. 1999) (quoting *Hoffa v. United States,* 385 U.S. 293, 302 (1966) ("[T]he Fourth Amendment offers no protection for 'a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.' ").

[18] We forgo applying the factors we most recently cited in *State v. Bruski,* 2007 WI 25, 299 Wis. 2d 177, 727 N.W.2d 503, for determining whether an individual's expectation of privacy is reasonable. We do so because the *Bruski* factors apply to assertions of a privacy interest that were taken from the context of an expectation of privacy in real property. *State v. Fillyaw,* 104 Wis. 2d 700, 711–12 n.6, 312 N.W.2d 795 (1981). *Bruski* then applied them to personal property, i.e., a vehicle in which Bruski had no property interest and in which he took no precautions to protect his privacy. *Bruski,* 299 Wis. 2d 177, ¶¶ 27–28. Accordingly, the *Bruski* factors are less helpful in cases such as this one where the assertion of a privacy interest is made in connection with oral statements. For example, the factors we listed in *Bruski* are the following: (1) whether the

public place. Fourth, Duchow claims that the volume at which he delivered the statements was sufficiently low that a third party outside of the bus could not overhear them. Finally, he argues that this court's acceptance of the State's contention that there is no reasonable expectation of privacy in statements made to a victim during a crime would be tantamount to a ruling that all intercepted communications during the commission of a crime may be recorded without compliance with the Electronic Surveillance Control Law. We conclude that Duchow's arguments are discordant with what society is willing to recognize as reasonable.

¶ 24. In so concluding, we apply certain factors among those listed above. The factors we have selected are neither an exclusive, nor a mandatory, list. The relevant factors will vary, depending on the facts each case presents. Here, we conclude that the place or location where the statements were made and the potential for the statements to be reported are the most significant factors.[19]

¶ 25. We begin by considering the place where Duchow spoke. Duchow and Jacob were on a public

---

individual had a property interest in the premises; (2) whether the individual was lawfully on the premises; (3) whether the individual had complete dominion or control over the premises and therefore retained the right to exclude others; (4) whether the individual took precautions ordinarily taken by one seeking privacy; (5) whether the property was put to private use; and (6) whether the claim of privacy is consistent with historical notions of privacy. *Id.*, ¶ 24. While these factors may be instructive, we conclude that their focus on criteria relating to property renders them not directly applicable in evaluating whether an individual has an expectation of privacy in oral statements.

[19] In identifying these two factors as most relevant, we do not diminish the importance of the remaining factors in other

school bus being operated to transport children to school. Duchow was an employee of the school district and Jacob was a grade school pupil. Courts have held that an individual-employee's expectation of privacy is diminished in places that the individual shares with others, as compared with places retained for his or her exclusive use. *Plock v. Bd. of Educ. of Freeport Sch. Dist. No. 145,* No. 07 C 50060, 2007 WL 4553071 (N.D. Ill. Dec. 18, 2007);[20] *see also, State v. McLellan,* 744 A.2d 611 (N.H. 1999) (holding that school janitor did not have a reasonable expectation of privacy in public

contexts. However, they are of less relative importance under the facts presented here. Nonetheless, many of these factors cut against Duchow.

First, the volume of Duchow's statements is relatively less important because Duchow and Jacob were the only individuals on the school bus when Duchow made the statements at issue. Although there is no evidence that others were present to overhear Duchow's statements, Duchow may fairly be said to have shouted at Jacob.

Second, the record does not indicate that Duchow took any specific measures to ensure that his statements remained private.

Finally, although an electronic device recorded Duchow's statements, nothing in the record indicates that any "technological enhancements" were needed to do so.

[20] *Plock v. Bd. of Educ. of Freeport Sch. Dist. No. 145,* No. 07 C 50060, 2007 WL 4553071 (N.D. Ill. Dec. 18, 2007), is an unpublished opinion from the United States District Court for the Northern District of Illinois. That court adheres to the Federal Rules of Appellate Procedure, permitting citation to unpublished opinions. Fed. R. App. P. 32.1.

Federal Rules of Appellate Procedure 32.1 provides in relevant part:

> (a) Citation Permitted. A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been:

school classroom, as it was open to students and staff and was not his "personal space").

¶ 26. In *Plock*, a group of teachers filed suit against their school district after the district proposed installing audio and video recording equipment in classrooms as a result of allegations that students were being abused. *Plock*, 2007 WL 4553071, at *1. The court held that the teachers did not have a reasonable expectation of privacy in their classrooms. *Id.* at *3. It reasoned as follows:

> A classroom in a public school is not the private property of any teacher. A classroom is a public space in which government employees communicate with members of the public. There is nothing private about communications which take place in such a setting. Any expectations of privacy concerning communications taking place in ... classrooms such as those subject to the proposed audio monitoring in this case are inherently unreasonable and beyond the protection of the Fourth Amendment.

*Id.*

¶ 27. School bus drivers endure a similarly diminished expectation of privacy inside the school buses they operate. *Goodwin v. Moyer*, No. 3:CV-05–781, 2006 WL 839342 (M.D. Pa. Mar. 29, 2006).[21] In *Goodwin*, a school bus driver sued various school district officials, claim-

---

(i) designated as "unpublished," "not for publication," "non-precedential," "not precedent," or the like; and

(ii) issued on or after January 1, 2007.

[21] *Goodwin v. Moyer*, No. 3:CV-05–781, 2006 WL 839342 (M.D. Pa. Mar. 29, 2006), is an unpublished opinion of the United States District Court for the Middle District of Pennsylvania. The court rules for that district had not prohibited citation to unpublished opinions issued prior to January 1, 2007. The court now adheres to Federal Rule of Appellate

ing that the installation of a video camera on his school bus invaded his privacy. *Id.* at \*1–2. The court held that the presence of a video camera did not violate the bus driver's reasonable expectation of privacy. *Id.* at \*9. In so holding, the court reasoned that society, as well as the government, retains an interest in ensuring that the children and the bus driver alike are protected from "misdeeds" against each other. *Id.* In addition, the camera presented a minor intrusion because a school bus is not a private space; rather, it is a "public conveyance" in which the bus driver is "surrounded by others and in view of the public through the bus's windows." *Id.*

¶ 28.　We are persuaded by the reasoning of *Plock* and *Goodwin:* (1) The bus Duchow operated was not his personal space; nor did it become his personal property because he operated it; (2) the bus was being operated to convey public school students when the statements were made; (3) Jacob was a public school student; and (4) the bus had windows through which Duchow and Jacob could be seen.

¶ 29.　The totality of the circumstances here includes more than a public place; it also includes statements that are likely to be reported because they are threats to injure the person to whom the statement was made.

¶ 30.　A person's reasonable expectation of privacy is compromised when he or she knowingly exposes statements to others, rather than keeping them to himself or herself. *Longoria,* 177 F.3d at 1182 (citing *Katz,* 389 U.S. at 361 (Harlan, J., concurring)). More-

Procedure 32.1, which prohibits the United States Court of Appeals for the Sixth Circuit from forbidding citation to unpublished opinions issued on or after January 1, 2007. Fed. R. App. P. 32.1.

over, a subjective expectation of privacy is not reasonable when the words spoken are ones the hearer is likely to report, such as threats to injure the person to whom the statement was made. *Id.* at 1183; *see also, United States v. White,* 401 U.S. 745, 752 (1971) ("Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police.")

¶ 31. In *Longoria,* federal agents sought to thwart a drug smuggling operation by outfitting a tire shop, from which drugs were allegedly transported, with audio and video surveillance equipment. *Longoria,* 177 F.3d at 1181. The tire shop's owner acted as the government's informant, and he saw to it that Longoria's statements were recorded. *Id.* Based on the recordings, Longoria was indicted on multiple drug counts. *Id.*

¶ 32. The Tenth Circuit upheld the district court's denial of Longoria's motion to suppress. *Id.* at 1182. It concluded that Longoria had no reasonable expectation of privacy in his conversations. It reasoned that Longoria voluntarily entered the tire shop and "knowingly made incriminating statements in the informant's presence" because he assumed the informant could not understand Spanish, the language in which he was speaking. *Id.* at 1183. The court concluded that Longoria had "no reasonable expectation that the person in whose presence he conduct[ed] conversations [would] not reveal those conversations to others[,]" simply because the informant did not speak Spanish. Therefore, the court concluded that Longoria "assumed the risk that the informant would reveal his incriminating statements to law enforcement," and in assuming that risk, he relinquished any reasonable expectation of privacy in his speech. *Id.*

¶ 33. Longoria's reasoning applies to the circumstances here. Duchow's threats to harm Jacob, a person who could not personally repeat the words Duchow

said, are analogous to Longoria's incriminating statements made in the presence of the informant, a person who could not repeat the statements in English that Longoria had made in Spanish. Duchow's threat to harm Jacob, such as his threat to slap Jacob's face, was the type of statement that is likely to be reported to others. Duchow had no right to prevent Jacob from telling others what Duchow said or did. And in his own way, Jacob did tell. He told his parents when he began acting in an aggressive, angry fashion with his toys and his dog, and he told his school teacher when he cried when it was time for him to ride the school bus home.[22] *See id.* at 1183. By telling Jacob that he would harm him, Duchow, like Longoria, assumed the risk that his threatening statements would be revealed to others.

¶ 34. Moreover, preservation of a privacy interest in threats to harm the person to whom the threat is made is not what "free people legitimately may expect."

---

[22] Duchow cannot circumvent our conclusion that his threats to Jacob that he would harm him were likely to be reported by presuming that Jacob would not report them to anyone because Jacob is a mentally disabled child with a significant speech impairment. Statements are "knowingly exposed" even when the speaker harbors doubts about the hearer's comprehension and ability to repeat them. *Longoria,* 177 F.3d at 1183. *Longoria* held that the defendant did not have a reasonable expectation of privacy in his statements because he spoke in Spanish and believed that the informant did not understand Spanish:

> [W]e find no precedent recognizing expectations of privacy based on a listener's ability to comprehend a foreign language and decline to find such an expectation in this case . . . . [C]omprehension is a malleable concept not easily measured by either the defendant or the court. Attempting to delineate a standard based on subjective evaluations of linguistic capabilities would be unworkable to say the least.

*Id.*

*Whitrock,* 161 Wis. 2d at 973. To the contrary, those types of threats to harm are precisely the type of statements that one would reasonably expect to be reported.

¶ 35. *State v. Inciarrano,* 473 So. 2d 1272, 1275 (Fla. 1985), further supports our conclusion that individuals do not retain an expectation of privacy in threats to harm the person to whom the threat is made. In *Inciarrano,* the Florida Supreme Court held that a conversation and an ensuing homicide by gunshot, which were tape-recorded by the victim, did not constitute an "oral communication" under a statutory definition nearly identical to Wisconsin's.[23] *Id.* at 1275–76. The court concluded that, because "Inciarrano went to the victim's office with intent to do him harm," Inciarrano was a trespasser who had no reasonable expectation of privacy in regard to the statements he made on the premises. *Id.* at 1275.

¶ 36. While Inciarrano may be interpreted to hold that an individual's expectation of privacy hinges to some extent on his or her right to be on a premises, it may also reasonably be interpreted to hold that an individual does not have a reasonable expectation of privacy in statements that evince an intent to harm the person to whom the statement was made. Either interpretation, however, is consistent with the notion that

---

[23] At the time *State v. Inciarrano,* 473 So. 2d 1272 (Fla. 1985), was issued, Florida statutes defined "oral communication" as follows: " 'Oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception *under circumstances justifying such expectation* and does not mean any public oral communication uttered at a public meeting." *Id.* at 1275 (quoting Fla. Stat. § 934.02(2) (1981) and adding emphasis).

25

individuals do not have a reasonable expectation of privacy in statements to others that are likely to be reported. Accordingly, the Florida Supreme Court concluded that the recorded conversation did not constitute "oral communication" within the meaning of Florida statutes. *Id.* at 1275–76. Stated otherwise, Inciarrano assumed the risk that his victim was recording their encounter for relay to police, thereby extinguishing any reasonable expectation of privacy in what he said. *White,* 401 U.S. at 752–53.

¶ 37. Our review of the totality of the circumstances presented here leads us to conclude that Duchow had no reasonable expectation in the privacy of his threats and abuse of Jacob on the school bus. The school bus was public property, being operated for a public purpose. The statements Duchow seeks to protect were threats directed at a child while the child was being transported to school. Because Duchow threatened Jacob, Duchow engaged in speech that was likely to be reported. Duchow assumed the risk of disclosure. Accordingly, we conclude that Duchow's abusive speech had no reasonable expectation of privacy attendant to it. Therefore, his threats to Jacob are not "oral communication" within the meaning of Wis. Stat. § 968.27(12).

¶ 38. Duchow's argument that he and Jacob were the only individuals on the bus is of no consequence. As the court in *Plock* explained, "There is nothing private about communications [that] take place in [] a [public] setting." *Plock,* 2007 WL 4553071, at *3.

¶ 39. Duchow's arguments that bus riders rarely carry tape recorders in their backpacks and that he did not speak in an overly loud voice are also unavailing. Duchow never was vested with exclusive control of the school bus he drove, which cuts against his having any reasonable expectation of privacy in the passenger area

of the bus. *Id.* at \*1. Moreover, the presence of a recording device on a bus is a minor intrusion on a driver, because society retains a significant interest in ensuring the safety of those traveling on public school buses. *See Goodwin,* 2006 WL 839342, at \*9.

¶ 40. In sum, because Duchow's statements were made on a public school bus, being used for the public purpose of transporting school children; because they were threats to harm Jacob for which Duchow assumed the risk that Jacob would report, Duchow had no reasonable expectation of privacy in his statements. Accordingly, his statements do not constitute "oral communication" as defined by the Electronic Surveillance Control Law; and therefore, the Electronic Surveillance Control Law provides no basis for suppression.

### III. CONCLUSION

¶ 41. The dispositive issue in this appeal is whether Duchow's tape-recorded statements were "oral communication" as defined in Wis. Stat. § 968.27(12), a part of the Electronic Surveillance Control Law. We conclude that the statements were not "oral communication" because Duchow had no reasonable expectation of privacy in the statements. Because the statements are not "oral communication," they do not fall within the scope of the Electronic Surveillance Control Law; and therefore, the Electronic Surveillance Control Law provides no basis for suppression. Accordingly, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.