**AFFIRMED and Opinion Filed December 6, 2024**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**Nos. 05-23-01044-CR**
**05-23-01045-CR**
**05-23-01046-CR**
**05-23-01047-CR**

**EDDIE OWEN HENDERSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 366-84577-2023, 366-84578-2023,**
**366-84579-2023, and 366-84580-2023**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Carlyle
Opinion by Justice Carlyle

After a trial court denied appellant Eddie Owen Henderson's motion to suppress, he pled guilty to four counts of invasive criminal recordings and the court sentenced him to 180 days of confinement. *See* TEX. PENAL CODE § 21.15. Henderson argues the trial court erred when it denied his motion to suppress. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

On the state's motion, we abated this appeal for the trial court to make findings of fact, which it did, as follows:

1. Plano residents . . . reported to police on May 2, 2022, that their fourteen-year-old daughter had twice spotted a white male in their backyard, looking through her bedroom window. [The father] attempted to confront the man, followed him to his car, and obtained his license plate information as he drove off. A search of the backyard revealed a mobile hotspot and a recording device pointed at the daughter's window.

2. Based on the license plate's registration and the physical description . . . Detective Catherine Foreman of the Plano Police Department identified Defendant Eddie Henderson as the suspect. Foreman obtained two arrest warrants for Henderson on charges of criminal trespass.

3. Plano Police Department officers arrested Defendant on the morning of May 18, 2022, as he drove into the parking lot of Archgate Montessori. Defendant was employed as a music teacher at the school.

4. After Henderson's arrest, Detective Foreman then went to Archgate Montessori's office building and contacted the Head of School, Rebecca Bernard.

5. Bernard escorted Detective Foreman and Detective Carlos Harwell to the bathrooms and changing rooms within the school and allowed them to search for hidden cameras. No recording devices were found.

6. Detective Foreman specifically asked to be let into Henderson's classroom.

7. Henderson's classroom was connected to another music teacher's classroom by an adjoining door. While each teacher had a primary classroom, neither teacher had a dedicated desk and they each used both rooms for storing supplies and for instruction.

8. After briefly looking around Henderson's classroom, Detective Foreman walked back into the hallway to search a bathroom, while Detective Harwell and Bernard entered the adjoining classroom to speak to Henderson's co-teacher. When Detective Foreman returned to Henderson's classroom a minute later, she found herself alone.

9. While alone, Detective Foreman approached a double-doored closet and opened it.

10. When she opened the closet, Detective Foreman noticed that it contained various school supplies as well as a duffel bag, running shoes, a briefcase, and a man's white dress shirt.

11. Detective Foreman returned to the hallway to summon Detective Harwell and Bernard, and inquired as to whether the personal effects belonged to Defendant. Bernard informed the detectives that Henderson and his co-teacher shared the closet. Bernard then brought the co-teacher into the classroom. The co-teacher confirmed that all of the personal items in the closet belonged to Henderson.

12. There was no school policy against teachers storing personal items in the closet. Rather, Bernard told the detectives it was typical for teachers to keep their personal belongings in the closets because the educators did not have dedicated desks.

13. The detectives removed Henderson's personal property from the closet without a warrant.

14. Detective Foreman grabbed Henderson's shoes, opened the top of the unzipped duffel bag, and placed the shoes inside before taking the bag out of the closet.

15. Detective Harwell picked up a closed, self-sealing[1] cardboard box labeled "Honeywell Home" from among the belongings in the closet. Harwell stated he did not know what it was, but then said, "Let me look at it," and opened the box. The box contained hard drives, memory cards, and cords.

---

[1] Henderson's counsel made much of this "self-sealing" description at oral argument but pictures in the record clearly demonstrate this is a box with an attached top that has a tab one can tuck into the body of the box to "seal" it.

16. The detectives seized the briefcase, duffel bag, "Honeywell Home" box, running shoes, and dress shirt.

17. Pursuant to the warrant, the digital content contained in the devices within the "Honeywell Home" box was searched. This content formed the basis of Henderson's four counts of Invasive Visual Recording.

18. The trial court held a hearing on Defendant's motion to suppress on March 23, 2023. The court heard testimony from Detective Foreman and considered evidence presented, including body-worn camera footage from the search.

19. Detective Foreman's testimony was credible.

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we give "almost total deference" to the trial court's determination of the facts and review findings of fact in the light most favorable to the trial court's ruling to determine whether the evidence supports that ruling. *Id*. We also review the trial court's application of the law of search and seizure to the facts de novo and sustain the trial court's ruling if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id*. at 448.

The trial court also entered three conclusions of law:

1. Henderson failed to establish he had a legitimate expectation of privacy in the classroom closet.

2. The search of the closet was pursuant to voluntary, effective third-party consent. The co-teacher and Director Meena Kara had actual or apparent authority over the closet. Both granted consent to search the closet and seize items found therein.

3. Henderson did not have an independent legitimate expectation of privacy within the closet and the items recovered.

We review these conclusions of law de novo. *See Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013).

> The Fourth Amendment guarantees
>
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (HARLAN, J., concurring)). "Our Fourth Amendment analysis embraces two questions. First, we ask whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he [sought] to preserve [something] as private . . . Second, we inquire whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." *Bond v. United States*, 529 U.S. 334, 338 (2000) (cleaned up).

An accused has standing to challenge the admission of evidence obtained by a governmental intrusion only if he had a legitimate expectation of privacy in the place invaded. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). To carry his burden to prove facts establishing his legitimate expectation of privacy,

Henderson must prove "(a) that by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable." *Id.* This analysis includes (1) whether he had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *See State v. Granville*, 423 S.W.3d 399, 407–08 (Tex. Crim. App. 2014).

The Seventh Circuit has recognized a reasonable expectation of privacy both for private schools and for those in loco parentis to the students. *Doe v. Heck*, 327 F.3d 492, 511–12 (7th Cir. 2003). *Heck* dealt with child welfare workers interviewing a student about the use of corporal punishment at the school without a warrant or consent from the school or the child's parents. *Id.* at 499. The court stated that "[p]rivate schools, by their very nature, are controlled environments that, out of sheer necessity (i.e., for the safety and protection of the children entrusted to them) are not open to the general public." *Id.* at 511 (citing *Simpson v. Saroff*, 741 F. Supp. 1073, 1078 (S.D.N.Y. 1990)).

The Court of Criminal Appeals instructs that occupants of business establishments enjoy the same constitutional right to be free from unreasonable searches as do private residence occupants, but that "business and commercial premises are not as private as residential premises" due to the "open to the public" nature of certain businesses. *State v. Weaver*, 349 S.W.3d 521, 526–27 (Tex. Crim. App. 2011). The record demonstrates that the Montessori school here was not open to the public but that the school's director consented to the police entry and search here, leading them throughout the building.

We turn to the closet and cardboard box, analyzing Henderson's privacy expectations together because the analysis is conceptually similar. The record demonstrates that Henderson legitimately kept his items in the closet but it also demonstrates that he did not have complete dominion or control or the right to exclude others from the closet or the box inside. Henderson's colleague had equal access to the closet, and there were many more classroom-use items in the closet than personal items for either teacher. *See State v. McLellan*, 744 A.2d 611, 614 (N.H. 1999) (holding school janitor did not have a reasonable expectation of privacy in public school classroom where he did not "enjoy[ ] exclusive use and control" and the room "was open to students and school staff" and "not his personal space"). There were tubs of Play-Doh, puzzles, and manipulatives, all items students could be reasonably be expected to access during their school day. That Henderson may

–7–

have directed students not to access the electronics in his closed box speaks more to his authority as a teacher and less to any privacy interest.

Henderson took no precautions with respect to the closet or the box that would normally be taken by those seeking privacy, such as locks. *See Villarreal*, 935 S.W.2d at 138. In *Dawson v. State*, 868 S.W.2d 363, 370 (Tex. App.—Dallas 1993, pet. ref'd), we held that a dancer had reasonable expectation of privacy in her locker in the Showtime Club dressing room when she used a personal lock which only she could access. But Henderson did not, and arguably could not, lock the closet. And he did not lock up the electronic storage devices; his attempts to analogize the so-called "self-sealing box" with Dawson's locker fail. Finally, whatever private use Henderson attempted to carve out by placing his own items in the closet does not in this situation outweigh the overwhelming use for which the closet functioned: classroom storage.

Had this been Henderson's classroom, not shared with another teacher, where he had no desk, and the searched space was devoted entirely to housing Henderson's personal work papers, the *Mancusi* case on which he relies might provide support for a privacy expectation. *See Mancusi v. DeForte*, 392 U.S. 364, 368 (1968) (union official has reasonable expectation of privacy in shared office). Or had this been Henderson's teacher workroom where a desk assigned to him with a locked drawer was searched, the privacy interest calculation may be different. But the private school classroom setting is sufficiently different than typical office settings to justify

a unique analysis and illustrates how we cannot perfectly rely on case law involving a traditional office here. *See O'Connor v. Ortega*, 480 U.S. 709, 718 (1987) (evaluate reasonableness of privacy expectations on a case-by-case basis).

Based on the record, we conclude Henderson has not demonstrated a reasonable expectation of privacy in the shared and unlocked classroom closet or the unprotected and unlabeled cardboard box therein. Thus, we conclude Henderson does not have standing to challenge the State's search of the closet and cardboard box. *See Villarreal*, 935 S.W.2d at 138. Because this alone sufficiently justifies the trial court's denial of the motion to suppress, we need not consider Henderson's second issue. *See* TEX. R. APP. P. 47.4.[2]

We affirm the trial court's denial of Henderson's motion to suppress.

/Cory L. Carlyle/

CORY L. CARLYLE
JUSTICE

231044f.u05
231045f.u05
231046f.u05
231047f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

---

[2] In any event, it is clear that the school director consented to the classroom and closet search, and that the teacher with whom Henderson shared the closet also provided consent. *See Mancusi*, 392 U.S. at 369 (suggesting union officials could have but did not consent to search of shared office); *Weaver*, 349 S.W.3d at 526; *Salazar v. State*, No. 05-11-00597-CR, 2012 WL 2853297, at *7 (Tex. App.—Dallas July 12, 2012, no pet.) (mem. op. not designated for publication).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EDDIE OWEN HENDERSON,
Appellant

No. 05-23-01044-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-84577-
2023.
Opinion delivered by Justice Carlyle.
Justices Reichek and Nowell
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 6th day of December, 2024.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EDDIE OWEN HENDERSON,
Appellant

No. 05-23-01045-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-84578-
2023.
Opinion delivered by Justice Carlyle.
Justices Reichek and Nowell
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 6th day of December, 2024.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EDDIE OWEN HENDERSON, Appellant

No. 05-23-01046-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas
Trial Court Cause No. 366-84579-2023.
Opinion delivered by Justice Carlyle. Justices Reichek and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of December, 2024.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EDDIE OWEN HENDERSON,
Appellant

No. 05-23-01047-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-84580-
2023.
Opinion delivered by Justice Carlyle.
Justices Reichek and Nowell
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 6th day of December, 2024.