473 So.2d 1272 (1985)
STATE of Florida, Petitioner,
v.
Anthony Paul INCIARRANO, Respondent.
No. 65136.
Supreme Court of Florida.
June 27, 1985.
Rehearing Denied September 5, 1985.
*1273 Jim Smith, Atty. Gen. and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for petitioner.
Melvyn Schlesser of Isenberg and Schlesser, Fort Lauderdale, for respondent.
ALDERMAN, Justice.
We review the decision of the District Court of Appeal, Fourth District, in Inciarrano v. State, 447 So.2d 386 (Fla. 4th DCA 1984), wherein the district court certified as a question of great public importance whether the recording of a conversation by one of the participants constitutes the interception of an oral communication within the meaning and intent of chapter 934, Florida Statutes (1981). This issue can be narrowed by the particular factual situation involved. We will address the more narrow issue of whether the tape recording made by a victim of his own murder must be excluded from evidence pursuant to chapter 934. With much reluctance and after convincing reasoning to the contrary, *1274 the district court answered its certified question in the affirmative. We disagree and find that neither State v. Tsavaris, 394 So.2d 418 (Fla. 1981), nor State v. Walls, 356 So.2d 294 (Fla. 1978), controls the answer to the narrow question before us. We hold that under the circumstances of this case the subject tape recording does not fall within the statutory proscription of chapter 934.
Inciarrano went to the office of the victim and murdered him. The conversation between the victim and Inciarrano regarding a business deal in which the victim no longer wanted a part, the sound of a gun being cocked, five shots being fired by Inciarrano, several groans by the victim, the gushing of blood, and the victim falling from his chair to the floor were recorded on a tape found by the investigating officer in the victim's desk.
Inciarrano was indicted for the first-degree premeditated murder of the victim. He moved to suppress the tape of the conversation between himself and the victim on the basis that section 934.03, Florida Statutes (1981), proscribed the interception of these oral communications and section 934.06 requires that these proscribed interceptions be excluded from evidence at trial. He relies on State v. Walls and State v. Tsavaris as controlling precedent requiring the exclusion of the recording. Inciarrano concedes that his voice was on the recording.
After the hearing on this motion, the trial court denied the motion to suppress on the basis, among others, that:
2. The utterances made by the Defendant on the tape recording admitted into evidence did not constitute "oral communications" within the meaning of Florida Statutes 934.02(2), in that said statements were not made under circumstances justifying an expectation to privacy;
3. In arriving at the above finding, the Court considered, among other factors, the quasi-public nature of the premises within which the conversations occurred, the physical proximity and accessibility of the premises to bystanders, and the location and visibility to the unaided eye of the microphone used to record the conversations;
... .
5. The State has made a prima facie showing that the death of one Michael Anthony Phillips was procured by the Defendant thereby precluding said individual from testifying to the contents of the communications (which testimony would have been clearly admissible under the decisions in Tsavaris and State v. Walls, 356 So.2d 294 (Fla. 1978). Cf., Zacke v. State, [418 So.2d 1118] (5 DCA), opinion filed August 11, 1982);
Inciarrano then pled nolo contendere to first-degree murder and reserved the right to appeal the dispositive issue of the admissibility of the tape recording. He was sentenced to life imprisonment with the requirement that he serve a mandatory minimum of twenty-five years in prison.
Feeling constrained by Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), not to rule contrary to decisions of this Court, the Fourth District reversed the order denying Inciarrano's motion to suppress on the authority of State v. Walls and State v. Tsavaris.
Walls and Tsavaris, however, do not control in the present case. Section 934.03 describes the limited circumstances where the interception of oral communications is lawful. In Walls, this Court addressed the constitutionality of sections 934.02(2), 934.03, and 934.06 and the question of whether an extortionary threat delivered personally to the victim in his home was an "oral communication" as defined in section 934.02(2). We answered that it was an "oral communication;" held that pursuant to section 943.03, Florida Statutes (1975), the electronic recording of the "oral communication" without the consent of all parties to the communication was prohibited; and held that the subject communication did not fall within any situations permitting interception set forth in section 934.03(2). Additionally, finding that chapter 934 was designed *1275 to effectively protect the privacy of oral and wire communications and to protect the integrity of court and administrative proceedings, we upheld the validity of the statutes in question.
Although the issue of whether the recording of Walls' threats was an "interception" within the definition of section 934.02(3) was not presented to this Court in State v. Walls, this issue was presented in the subsequent case of State v. Tsavaris. In that case, Tsavaris moved to suppress a recording of a telephone call he had made to the medical examiner inquiring as to the autopsy results of the victim whom he was indicted for murdering. The trial court granted his motion to suppress on the basis that the recording was an unlawful interception. When this issue was presented to us by certified question from the District Court of Appeal, Second District, a majority of this Court agreed that the recording was an unlawful interception.
In neither Walls nor Tsavaris did we address the requirement of section 934.02(2) that there be a reasonable expectation of privacy in the oral communication in order for it to be protected under the security of communications statute. Section 934.02(2), in defining oral communication, expressly provides: "`Oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and does not mean any public oral communication uttered at a public meeting." (Emphasis added.) From this language, it is clear that the legislature did not intend that every oral communication be free from interception without the prior consent of all the parties to the communication. For example, in Chandler v. State, 366 So.2d 64 (Fla. 3d DCA 1978), cert. denied, 376 So.2d 1157 (Fla. 1979), aff'd, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981), the district court held that defendants who engaged in an open-air conversation while using commercially sold walkie-talkies or handie-talkies did not demonstrate a justifiable expectation that their conversation would remain private. In that case, the court, therefore, concluded that the tape recording of their conversation which contained numerous statements linking defendants to a burglary was not proscribed by chapter 934. The statute protects only those "oral communications" uttered by a person exhibiting an expectation of privacy under circumstances reasonably justifying such an expectation.
This expectation of privacy does not contemplate merely a subjective expectation on the part of the person making the uttered oral communication but rather contemplates a reasonable expectation of privacy. A reasonable expectation of privacy under a given set of circumstances depends upon one's actual subjective expectation of privacy as well as whether society is prepared to recognize this expectation as reasonable. Shapiro v. State, 390 So.2d 344 (Fla. 1980), cert. denied, 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981).
To prevail Inciarrano must not only have had a subjective expectation of privacy, but also his expectation under the circumstances must have been one that society is prepared to recognize as reasonable. Assuming he had a subjective expectation of privacy, we conclude that such expectation, under the circumstances, was not justified. Without a reasonable expectation of privacy, Inciarrano's "oral communications" were not protected under section 934.03, and the trial court properly denied his motion to suppress. Inciarrano went to the victim's office with the intent to do him harm. He did not go as a patient. The district court, in the present case, correctly stated:
One who enters the business premises of another for a lawful purpose is an invitee. At the moment that his intention changes, that is, if he suddenly decides to steal or pillage, or murder, or rape, then at that moment he becomes a trespasser *1276 and has no further right upon the premises. Thus, here, if appellant ever had a privilege, it dissolved in the sound of gunfire.
447 So.2d at 389.
Accordingly, we hold that because Inciarrano had no reasonable expectation of privacy, the exclusionary rule of section 934.06 does not apply. The decision of the Fourth District is quashed, and the cause is remanded with instructions to reinstate the order of the trial court denying Inciarrano's motion to suppress.
It is so ordered.
BOYD, C.J., and ADKINS and McDONALD, JJ., concur.
OVERTON, J., concurring with an opinion.
EHRLICH, J., concurring in result only with an opinion, in which SHAW, J., concurs.
OVERTON, Justice, concurring.
I concur and write to emphasize that when an individual enters someone else's home or business, he has no expectation of privacy in what he says or does there, and chapter 934 does not apply. It is a different question, however, when the individual whose conversation is being recorded is in his own home or office. In my view, our construction of chapter 934 in Shevin v. Sunbeam Television Corp., 351 So.2d 723 (Fla. 1977), upholding the constitutionality of the statute with regard to its prohibition of secret electronic recordings by investigative reporters, applies to the latter situation but not to the circumstances of this case. The decisions of this Court and the district courts of appeal construing chapter 934 demonstrate the difficulties involved in the proper application of this statutory provision. I suggest that the legislature, in its next legislative session, review the need for, and the possible amendment of, this statutory provision.
EHRLICH, Justice, concurring in result only.
I agree with much of the district court's analysis, and with Justice Alderman's lucid and accurate analysis in his separate opinion to State v. Tsavaris, 394 So.2d 418, 429 (Fla. 1981) (Alderman, J., concurring in part, dissenting in part), and common sense.
"Interception" is not a synonym for "reception" in common usage. Interception, by its plain (dictionary) meaning, requires an unintended or wrongful reception. However, when one speaks to another, even in circumstances in which one has a reasonable expectation of privacy, the speaker intends that the hearer receive and thereafter has no control over the hearer's dissemination of that speech. See, e.g., Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) (Testimony of government informer about conversations between defendant and defendant's attorney in defendant's hotel room was not suppressible because there was no violation of defendant's fourth, fifth or sixth amendment rights.)
Here, the victim was the intended recipient of the conversation with the alleged murderer. The victim could not "intercept" that which was knowingly and intentionally directed at him. He also recorded it. Once the conversation was directed to him, it was in his possession, whether through memory or recording.
Neither is there a justifiable expectation of privacy upon which the alleged murderer can rely. At the time of the homicide, the state of Florida had granted to its citizens a higher degree of privacy for conversations occurring in an individual's own home than that afforded under the United States Constitution. State v. Sarmiento, 397 So.2d 643 (Fla. 1981), held that one who speaks to a visitor in his own home may not be subjected to a wiretap, even though the visitor gave his consent to be wired. Respondent here may not borrow that expectation of privacy to cloak his own communication, however. That protection was personal to the individual in his own home, thus it cannot be used by respondent to create "circumstances justifying [an] expectation" *1277 that such communication is not subject to recording.
This highlights my basic dissatisfaction with the majority opinion. Privacy rights attach to individuals, not to actions. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). To hold, as the majority does, that the commission of a criminal act waives a privacy right requires an entirely new legal definition of privacy rights which would, in turn, shake the foundation of fourth amendment analysis. This statute, clearly formulated to protect legitimate privacy interests, was drafted with sufficient clarity to achieve the appropriate result here without requiring a distortion of fundamental concepts. It is this Court's tortuous misconstruction of the plain language of the statute which requires the indefensible rationale of the majority opinion. It would be more judicially honest to admit the error and recede from Walls and Tsavaris and to hold that the statute is inapplicable. The victim no more "intercepted" the conversation than he "intercepted" the bullets that ended his life.
The proper analysis of these facts should rest solely upon Inciarrano's legitimate (as opposed to subjective) expectation of privacy in the business office of his victim. Because he had no legitimate expectation of privacy there, and because he freely and voluntarily gave his oral communication to his victim, the statute is inapplicable.
To focus, as does the majority, on the act leads to absurd results. Why were Walls's privacy rights not "dissolved" by his extortionate threats? Why was Tsavaris's expectation of privacy not "dissolved" by his attempt to obstruct the investigation of the murder? If criminal acts waive privacy rights, as the majority implies, police have the right and duty to intrude without a warrant into a bedroom where the owner/resident is smoking marijuana, reasoning that the fourth amendment protection has "gone up in smoke."
SHAW, J., concurs.