# STATE OF FLORIDA v MCKINNEY, et al. (Consolidated)
## Case No. MM86-0949A1-XX
County Court, Polk County

July 24, 1986

### APPEARANCES OF COUNSEL

**Paul Wallace,** Assistant State Attorney, for plaintiff.
**Richard Straughn** for defendants.

### OPINION OF THE COURT

DICK PRINCE, County Judge.

THIS CAUSE coming on to be heard upon the Motion to Suppress

filed by Defense Counsel representing all of the above-captioned Defendants, said Motion made pursuant to the provisions of Florida Statute 934.09(9)(a), and the Court having heard the testimony of the State's witness called at the Hearing, the arguments of Counsel, and otherwise being fully advised in the premises, it is thereupon:

ORDERED AND ADJUDGED as follows:

*FACTS*

1. The facts of the case are undisputed in any material fashion. On December 23, 1985, agents of the Special Investigations Division of the Polk County Sheriff's Department executed a Search Warrant at the home of an alleged sports bookmaker. In the execution of the warrant, amongst other evidence, the agents found and seized fifteen (15) cassette tapes, two (2) tape recorders, and two (2) telephones, together with various and sundry bookmaking records.

2. The fifteen (15) cassette tapes which were seized contained conversations between the bookmaker and persons placing bets on various sporting events. It is uncontested that these tapes were made by the bookmaker on his own initiative for the purpose of documenting wagering transactions. It is also uncontested that although investigating officers have presently been able to identify between thirty (30) to forty (40) of the persons whose voices are recorded placing bets or inquiring about bets which were placed, the existence of any tapes or the fact of tape recording was unknown to all bettors with the exclusion of the Defendants Etheridge and Segal. It is further undisputed that although on the tapes the caller/bettor could hear background conversations at the bookmaker's home, there is no indication whatsoever that the caller/bettor could be hear by any other party saving the bookmaker himself.

3. The Defendant Segal's purported knowledge of any tapes or taping by the bookmaker allegedly came about at the end of a taped conversation wherein a dispute had arisen between the bookmaker and Segal as to the precise nature of the bet which had been placed. At the end of this argumentative conversations, the bookmaker informed Segal: "I have a tape". Thereafter, the State cannot show that Defendant Segal placed any further wagers nor made further statements or inquiry regarding any past or present debts.

4. As to Defendant Etheridge, a facsimile tape was played at the Suppression Hearing purporting to be a conversation between Defendant Etheridge and the bookmaker, the first portion of the conversation regarding certain bets which the Defendant's son had placed with the

88

bookmaker and was currently in arrears to the sum of between seven and eleven thousand dollars. During this portion of the conversation, the bookmaker continuously advised Etheridge that he had tapes regarding these transactions which he would gladly play for the Defendant Etheridge and the Defendant's ex-wife, the son's mother. Nonetheless, despite numerous and pointed references by the bookmaker to the existence of such tapes, after the conversation by the Defendant Etheridge regarding his son's transactions, the Defendant (via his purported voice on the tape) went on to ask for the betting line on that day's games and further went on to discuss his prior most recent bets placed with the bookmaker, the aggregate amount of money which had been made on those bets, the amount of money which could have been made if alternative wagers had been placed in their stead, and the fact that certain of these bets had been placed by the Defendant Etheridge at the behest of and on the behalf of another third party.

## ARGUMENTS OF LAW

1. The Defense's argument for suppression is based upon the exclusionary rule prohibiting the use as evidence of unlawfully intercepted wire communications contained in Florida Statute 934.06, which reads in relevant part:

> "Whenever any wire or oral communication has been intercepted, no part of the content of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court . . . if the disclosure of that information would be in violation of this chapter."

The Defense contends that since the bettor/caller/defendants had not consented to the taping of their conversations with the bookmaker, and that since they had a reasonable expectation of privacy in such telephonic or wire communications, that the contents of the intercepted wire communications which were placed on the cassette tapes, or evidence derived therefrom, must be suppressed. As authority for such suppression, the Defense as cited three recent Florida Supreme Court cases, which are in chronologic order; *State v. Walls*, 356 So.2d 294 (1978), *State v. Tsavaris*, 394 so.2d 418 (1981) and *State v. Inciarrano*, 473 So.2d 1272 (1985).

2. The State argues that the case at Bar is one of first impression in Florida, and that a person should enjoy no reasonable right of privacy nor security of communication while placing an illegal bet with a bookmaker over the telephone. The State further argues that under the rationale of the *Inciarrano* decision (supra), Defendant Etheridge and

Defendant Segal had no reasonable expectation of privacy in their telephonic communication since they had each been made aware of the existence of tapes and tape recording equipment by the bookmaker.

## CONCLUSIONS OF LAW

1. Pursuant to Florida Statute 934.06, the Court finds that the disclosure of information obtained from the cassette tapes of the intercepted wire communications involving Defendants MCKINNEY, SHIREY and WILLIS would be in violation of the provisions of Chapter 934, Florida Statutes, and hence must be suppressed; and further that no evidence derived therefrom may be received in evidence in the instant case. It is uncontested that these three (3) Defendants had not consented to a tape recording being made and the Court presently finds, in accordance with the criteria set forth by the Florida Supreme Court in *Inciarrano* (supra at page 1275), that each of the intercepted wire communications of these three (3) individuals contain statements "uttered by a person exhibiting an expectation of privacy under circumstances reasonably justifying such an expectation". The State has argued that the *Inciarrano* case goes on in the next paragraph to state that: "A reasonable expectation of privacy under a given set of circumstances depends upon one's actual subjective expectation of privacy as well as whether society is prepared to recognize this expectation as reasonable". The State argues that society is not prepared to recognize the privacy rights of a gambler placing an illegal wager by telephone with his bookie as reasonable. The State contends that a person committing a crime somehow waives all reasonable expectations of privacy, apparently under the unspoken rationale that if an elective legislature has proscribed certain acts, it must necessarily follow that the electorate society is not prepared to recognize expectations of privacy regarding those acts as reasonable. In fact, the State has quoted with approval (apparently ignoring the intentional satire therein) the concluding sentence of Justice Ehrlich's concurring opinion in *Inciarrano*:

> "If criminal acts waive privacy rights, as the majority implies, police have the right and duty to intrude without a warrant into a bedroom where the owner/resident is smoking marijuana, reasoning that the Fourth Amendment protection has 'gone up in smoke'."

Such an argument, however, would wholly obviate the necessity for any exclusionary rule, be it that as contained in Florida Statute 934.06 or the more familiar one involving the Fourth Amendment to the United States Constitution. Allowing for oversimplification, the State's argument would lead to (or perhaps from) the premise that "guilty

90

parties have no rights", an "absurd result" as warned of by Justice Ehrlich in his concurring opinion in *Inciarrano*. In Anglo-American law, the guilt of the accused, when established by evidence illegally obtained, has not justified "throwing away the rule-book". The ends (conviction of the guilty) do *not* justify the means (use of evidence illegally obtained) in our system of jurisprudence. Guilty people still have rights.

In the case at Bar, the Florida Legislature prefaced the Security of Communications Chapter by making certain legislative findings regarding the intent and purpose of the law. To quote from Florida Statute 934.01(2):

> "In order to protect effectively the privacy of wire and oral communications, to protect the integrity of court and administrative proceedings, and to prevent the obstruction of intrastate commerce, it is necessary for the Legislature to define the circumstances and conditions under which the interception of wire and oral communications may be authorized and to prohibit any unauthorized interception of such communications and the use of the contents thereof in evidence in courts and administrative proceedings."

The Legislature of this sovereign State has added no exception to that finding, such as "except when talking to a bookmaker" or "except when committing a crime in that conversation."

The Court finds that Defendants MCKINNEY, SHIREY and WILLIS had not only a subjective expectation of privacy in speaking to their bookmaker, but also a reasonable expectation of privacy in that telephonic communication, which society is prepared to recognize despite the fact that the contents of the communication evidence a breach of the statutory criminal law of this State. This Court finds nothing in the Supreme Court pronouncements in the *Inciarrano* decision which warrant the conclusion that criminal activity alone is sufficient to prevent societal recognition of an expectation of privacy. Instead, the Supreme Court has stated that any expectation of privacy is subject to the circumstances of each particular case. In the instant case, (save only the criminal nature of the communications in placing a wager) there has been no showing that the three above-named Defendants had at any time any expectation of privacy in their telephonic communications with the bookmaker which could have been considered anything but "reasonable" under the attendant circumstances.

2. As regards Defendant SEGAL, although the State has shown that this Defendant was made aware of the existence of at least one tape at the conclusion of an argumentative conversation regarding a particular

91

bet which had been placed, the State cannot show that following this disclosure by the bookmaker that Defendant SEGAL ever placed another bet or made further communications regarding his illegal betting activity. Therefore, the Court presently finds that Defendant SEGAL likewise had both a subjective and objective "reasonable expectation of privacy" in those earlier communications with the bookmaker which had been intercepted and taped without the Defendant's prior consent or knowledge.

3. Having discussed all other Defendants, the Court finds that Defendant ETHERIDGE is in a unique position. In the intercepted and taped communication which the Defendant ETHERIDGE purportedly had with his bookmaker (detailed in the Statement of Facts above), this Defendant was told numerous times that tapes existed regarding betting transactions which had been placed by his son. Having been given this information (and in fact having had a rendezvous arranged whereat the Defendant ETHERIDGE and his ex-wife could themselves hear these tapes), the Court finds that it was subjectively unreasonable as well as objectively unreasonable for the Defendant ETHERIDGE to blithely assume that his conversations with the bookmaker were not in like fashion being recorded. The Defendant ETHERIDGE's cavalier attitude toward the existence of tape recording equipment and actual tapes themselves is witnessed by the fact that following the bookmaker's disclosure of the existence of such tapes, this Defendant then immediately went on to discuss both that day's line on sporting bets as well as numerous matters relating to the Defendant's last wagering transactions. The Court presently finds that under the criteria set forth in *Inciarrano*, lacking a reasonable expectation of privacy, "If (Defendant ETHERIDGE) ever had a privilege, it dissolved".

WHEREFORE, the Defense Motion to Suppress is GRANTED as regards Defendants MCKINNEY, SHIREY, WILLIS, and SEGAL; however, the Defense Motion to Suppress is DENIED as regards Defendant ETHERIDGE as to that taped conversation wherein the disclosure regarding tape recording was made known to the Defendant ETHERIDGE and as to any subsequent taped conversations between the Defendant ETHERIDGE and the bookmaker; although the Motion to Suppress as to the Defendant ETHERIDGE is GRANTED in part as regards any and all taped conversations between this Defendant and the bookmaker made prior in time to that taped conversation wherein the disclosure regarding tape recording was made known to the Defendant.

92

DONE AND ORDERED in Chambers at Bartow, Polk County, Florida, this 24th day of July, 1986.