VILLANTI, Judge,
Concurring in part and dissenting in part.
I agree with the majority that the trial court did not abuse its discretion by admitting the victim’s boyfriend’s statements. However, I must respectfully dissent from the portion of the majority’s opinion that could be interpreted as creating an exception to section 934.06 for victims of child sexual abuse because “where a statute is free from ambiguity, we must follow its plain meaning.” State Farm Mut. Auto. Ins. Co. v. Nichols, 932 So.2d 1067, 1073 (Fla.2006). In essence, that portion of the majority’s decision has declared that, despite the statute’s plain language, the legislature did not intend for audiotaped evidence gathered by a victim of child sexual abuse without the alleged abuser’s consent to be excluded even though the exclusion of such evidence is mandated by a duly enacted statute. While I would like the law to be so, I do not believe that it is so.
Section 934.06, Florida Statutes (2010), specifically provides:
Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this chapter. The prohibition of use as evidence provided in this section does not apply in cases of prosecution for criminal interception in violation of the provisions of this chapter.
(Emphasis added.) Section 934.03(1) generally prohibits the interception of any wire or oral communication. Section 934.03(2) provides a list of “exceptions” to this general prohibition on intercepting communications. One of the exceptions is if all of the parties to the conversation have consented to the interception. § 934.03(2)(d). Notably, however, the interceptor’s status as a victim of child sexual abuse is not included in that list. Thus, the plain language of sections 934.03 and 934.06 prohibits the admission of the recordings at issue in this case.
To reach its contrary result, the majority relies on State v. Inciarrano, 473 So.2d 1272 (Fla.1985), for the proposition that a recording made by a victim of child sexual abuse should not be subject to the clear and unambiguous provisions of section 934.06. However, in my view, the facts in *476 Inciarrano are sufficiently different from those in this case to preclude any purported application of stare decisis. In Inciar-rano, the defendant went to the victim’s business office with the intent to do harm to the victim. Id. at 1274. In finding that Inciarrano had no reasonable expectation of privacy in a recorded conversation made by the victim without Inciarrano’s consent, the court considered “the quasi-public nature of the premises within which the conversations occurred, the physical proximity and accessibility of the premises to bystanders, and the location and visibility to the unaided eye of the microphone used to record the conversations.” Id. The court also noted that when going into the victim’s place of business, Inciarrano was an invitee but that his status changed to that of a trespasser when he decided to commit a crime. Id. at 1275-76. In consideration of all of these factors, the court held that Inciarrano had no reasonable expectation of privacy in oral communications made while he was in the victim’s place of business.
Here, however, the facts show that McDade was inside his own bedroom in his own residence. Hence, the premises within which the conversation occurred were anything but “quasi-public,” and they were not accessible to “bystanders.” I cannot conceive of a location where an individual has a greater expectation of privacy than in his or her own bedroom in his or her own house — an area that has traditionally been presumed to have a heightened right of privacy, not a reduced one. See, e.g., Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (noting that “a man’s home is, for most purposes, a place where he expects privacy”) (Harlan, J., concurring); Jardines v. State, 73 So.3d 34, 45 (Fla.2011) (noting that a person has a reasonable expectation of privacy in his or her own private home). This is a crucial factual distinction.
To my reading of Inciarrano, the court focused on whether society was prepared to recognize the expectation of privacy in the location of the conversation — not the content of the conversation or the status of the recorder and/or recordee. Inciarra-no’s discussion of the quasi-public nature of the victim’s business premises and the invitee/trespasser distinction makes clear that the court decided the case based on the fact that Inciarrano did not have a reasonable expectation of privacy in the oral communication because he was at the victim’s business location. Whether his expectation of privacy was reasonable depended on the location — not the content— of the conversation. Hence, while I agree with the majority that society is not, in general, inclined to protect those who commit sexual offenses against children, it is the expectation of privacy in the location at issue — not any expectation of privacy in the substance of the conversation itself— that dictates whether one party may legally intercept that conversation.
I note that when chapter 934 was originally enacted in 1969, it permitted a private person to intercept an oral communication when the person was one of the parties involved. See ch. 69-17, Laws of Fla. However, in 1974, the legislature amended the statute to require consent of “all of the parties” to the conversation. See ch. 74-249, § 2, at 695, Laws of Fla. In the almost forty years since this statutory amendment, the legislature has declined to carve out an exception to the statute for victims of crimes. Surely, had the legislature intended to create such an exception, or even a very narrow exception for child sexual abuse victims, it could easily have done so. See, e.g., Am. Bankers Life Assurance Co. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968) (noting that “had the legislature intended the statute to import a more specific and definite *477 meaning, it could easily have chosen words to express any limitation it wished to impose”). As the majority aptly points out, when the legislature intends to provide such special protection to victims of child sexual abuse, it knows how to do so. See, e.g., § 90.404(2), Fla. Stat. (2010) (providing a special exception to the general rule concerning similar fact evidence in cases involving child sexual abuse). The fact that the legislature has chosen not to create such an exception to section 934.06 conveys an intent to forbid the use of all such interceptions, regardless of the vic-timhood of any of the parties to the conversation.
Perhaps the 1974 legislature was not thinking of barring evidence derived from vigilante justice. It certainly could not have conceived of the improved technology that would assist in such an endeavor in 2011. However, the existing statute leaves no room for these eventualities. Nor do I believe, as the concurring opinion posits, that the language in Inciarrano opens the door for this court, and the trial courts, to determine on an ad-hoc basis what privacy interests society is prepared to recognize. That role is reserved for the legislature. See Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (noting that it would be an abrogation of legislative poorer for the courts to extend, modify, or limit the express provisions of a statute). In a perfect world, the legislature would have amended section 943.06 to address the holding of Inciarra-no. Its failure to do so creates a legal dilemma for the State in cases when it seeks to overlook the victim’s extrajudicial actions in an effort to enhance its evidence against the accused. However, I do not believe it is within the courts’ reach to engage in policy-weighing.
Finally, while somewhat beside the point, my reading of the record shows that a jury using its common sense would have reached the same result without the inadmissible evidence. Hence, I would reverse McDade’s conviction and remand for a new trial without the admission of the audio-taped evidence.