[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14642
_____

D.C. No. 1:15-cv-20038-CMA

JAMES ERIC MCDONOUGH,

Plaintiff-Appellant,

versus

KATHERINE FERNANDEZ-RUNDLE,
in her official capacity as State Attorney,
Eleventh Judicial Circuit, State of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 12, 2017)

Before ED CARNES, Chief Judge, FAY, and PARKER,[*] Circuit Judges.

---

[*]    Honorable Barrington D. Parker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

PARKER, Circuit Judge:

Plaintiff-Appellant James Eric McDonough, proceeding *pro se*, appeals from a judgment of the United States District Court for the Southern District of Florida (Altonaga, J.) dismissing his complaint brought pursuant to 42 U.S.C. § 1983. After McDonough lodged a series of complaints of misconduct against an officer of the Homestead Police Department ("HPD"), he was invited by Alexander E. Rolle Jr., the Chief of Police, to a meeting in his office to discuss the complaints. Unbeknown to Chief Rolle, McDonough recorded a portion of the meeting on his cell phone and later posted portions of the recording on the internet. Shortly thereafter, he received a letter from Defendant Katherine Fernandez-Rundle, the Miami-Dade County State Attorney, informing him that his recording violated the Florida Security of Communications Act, and that the violation was a felony. *See* FLA. STAT. § 934.03 (2016). She forbade him from making future recordings and threatened him with prosecution if he did so.

McDonough then sued her under § 1983 alleging that the statute did not apply to him, was facially unconstitutional, and that the threat of prosecution violated his First Amendment right to free speech. The parties cross moved for summary judgment and the court granted Fernandez-Rundle's motion. *See McDonough v. Fernandez Rundle*, No. 15-20038-CIV-ALTONAGA/O'Sullivan (S.D. Fla. Sept. 17, 2015). The court did not parse § 934.03, assuming that it

2

applied to the recording.  Instead, it analyzed the recording under the First Amendment nonpublic forum principles because the recording took place in a police station. *Id*. at 8-11. The court held that § 934.03 as applied to McDonough did not violate the First Amendment because it was "reasonable and viewpoint neutral" and denied McDonough's request for relief. *Id*. at 15-16.  He appeals and we reverse.

We hold that McDonough did not violate § 934.03 and, consequently, the government's threatened prosecution has no basis in the law.  Because we resolve this case under state law, we need not reach the constitutional issue of whether the recording is protected by the First Amendment.

## BACKGROUND[1]

McDonough alleges that in October 2012 he complained to HPD officer Alejandro Murguido about his reckless driving and violation of traffic laws in the neighborhood where McDonough lived.  McDonough alleges that Murguido then arrested him in retaliation for the complaints. In response to the arrest, McDonough filed a complaint against Murguido with the Internal Affairs Department of the HPD.  Shortly thereafter, in April 2013, McDonough was again arrested for alleged incidents that Murguido claimed had occurred several months previously.  Criminal charges were lodged against McDonough but were

---

[1] Except as otherwise noted, the relevant facts are not disputed.

eventually dismissed.  In January 2014, McDonough filed a complaint with the HPD specifically alleging that Murguido arrested and harassed him in retaliation for his complaints about Murguido's conduct.

In response to these events, Chief Rolle invited McDonough to meet in his office to discuss the complaints regarding Murguido.  McDonough agreed to the meeting and arrived at the HPD on February 7, 2014 accompanied by a friend, Albert Livingston, who allegedly witnessed some of the incidents involving McDonough and Murguido.  Chief Rolle did not object to Livingston's attendance. A fourth person, Detective Antonio Aquino from the HDP Internal Affairs department, also joined the meeting at Chief Rolle's request.  No ground rules of any sort were set for the meeting.  Neither Chief Rolle nor anyone else from the HPD mentioned anything about the meeting being confidential in nature, or that recording or note taking was in any way discouraged or prohibited.  At the start of the meeting, McDonough placed his cell phone in plain view on the desk between him and Chief Rolle and proceeded to record their conversation.  Chief Rolle saw McDonough's cell phone but contends that he was unaware that McDonough was recording the meeting.

McDonough alleges that during the meeting he gave Chief Rolle documents containing witness statements about the incidents with Murguido, character references, and the personnel file of Murguido that contained various accident and

4

injury reports. At the meeting, McDonough also filed another Internal Affairs complaint against Murguido.  At one point, McDonough asked if there would be a record of their discussions, to which Aquino replied, "[W]e have all of this recorded . . . ." Appendix for Petitioner, *McDonough v. Fernandez Rundle*, No. 15-14642 (11th Cir. Dec. 31, 2015) [hereinafter Appendix] at 165.

After the meeting, McDonough filed a public records disclosure request for the documents concerning Murguido that he alleges he had given to Chief Rolle. However, when he received documents in response to his request, he discovered that certain ones concerning Murguido were not included.  McDonough then filed another public records disclosure request specifically for those documents, but Chief Rolle denied having received them.

To prove that he had given the documents to Chief Rolle, McDonough published portions of the recording on YouTube.  He alleged that the published portions of the transcript confirmed his account of giving the documents to Chief Rolle and proved that he was not candid when he denied having received them. A month later, McDonough received a letter dated December 9, 2014 from Fernandez-Rundel threatening him with arrest and felony prosecution under § 934.03.  The letter stated:

> A complaint has been filed with our office stating that on February 7, 2014, you recorded conversations you had with Chief Alexander Rolle and Internal Affairs Detective Antonio Acquino at the Chief's offices located at #4 South Krome Avenue in Homestead,

5

Florida. Florida Statute § 934.03, Interception and Disclosure of Wire, Oral, or Electronic Communications prohibits any party from intentionally intercepting any wire, oral, or electronic communication without the consent of the other party.

Recording a conversation without the permission of the other party or parties is a violation of the statute and is a 3rd degree felony.

We are bringing this to your attention to prevent any further violation of Florida law, as a future violation would expose you to criminal prosecution.  Enclosed is a copy of the pertinent law.

Appendix at 13.

In response to the threat of prosecution, McDonough sued under 42 U.S.C. § 1983, alleging that section 934.03 did not apply to him and that if it did, it violated the First Amendment.  He sought injunctive relief barring the State Attorney from prosecuting him under the statute.  As noted, the parties cross moved for summary judgment and the district court denied McDonough's motion and granted Fernandez-Rundle's motion, essentially on constitutional grounds.  *See McDonough*, No. 15-20038-CIV-ALTONAGA/O'Sullivan at 16.

Because both parties agreed that McDonough had a right to record under the First Amendment, the district court reasoned that the dispositive issue was what level of scrutiny should apply under the First Amendment.  The court concluded that the nonpublic forum analysis applied because the recording took place in the interior of a police station, a nonpublic forum. *Id.* at 5-11. Under the nonpublic forum analysis, a government's decision to restrict access "can be based on subject

matter and speaker identity so long as the distinctions drawn are reasonable . . . and are viewpoint neutral." *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc*., 473 U.S. 788, 806 (1985); *Uptown Pawn & Jewelry, Inc. v. City of Hollywood*, 337 F.3d 1275, 1280 (11th Cir. 2003); *United States v. Belsky*, 799 F.2d 1485, 1489 (11th Cir. 1986).  Applying these principles, the court held that prohibiting covert recording in a police station is reasonable and viewpoint neutral because the purpose of a police station is to carry out  law enforcement responsibilities. *See McDonough*, at 11.  The district court granted summary judgment in favor of the State Attorney and this appeal followed.  We review *de novo* a grant of summary judgment and the legal principles on which it is based. *See Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017); *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005).[2]

---

[2] As an initial matter, Fernandez-Rundle contends that McDonough lacks standing. Standing requires that: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the challenged conduct; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). We conclude that McDonough has sufficiently alleged these elements because the State Attorney threatened to arrest and prosecute him if he made a similar recording in the future.  The letter from the State Attorney warns explicitly that "a future violation would expose you to criminal prosecution," and refers to the fact that McDonough recorded his conversation with Chief Rolle and Acquino. Appendix at 13. It also emphasized that his action was a "violation" of Florida Statute § 934.03 and is therefore "a 3[rd] degree felony." *Id*. It is well-settled that "an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *Harrell v. Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010) (citing

## DISCUSSION

The district court did not reach what we determine is a dispositive issue: whether § 934.03 even applies to McDonough. We hold that it does not. The Section, titled "Interception and disclosure of wire, oral, or electronic communications prohibited," provides:

> 1) Except as otherwise specifically provided in this chapter, any person who:
> a) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication; . . .
> c) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; . . . shall be punished as provided in subsection (4).

FLA. STAT. § 934.03 (2016). Section 934.02 in turn defines "oral communication" as

> any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and does not mean any

---

*Pittman v. Cole*, 267 F.3d 1269, 1283 (11th Cir. 2001)). We have little difficulty concluding that McDonough suffered an injury which would be redressed by an injunction. McDonough has alleged that he would have to choose between foregoing his First Amendment speech rights or risking a felony prosecution. This injury-in-fact is directly traceable to the letter threatening prosecution under § 934.03. Redressability is also sufficiently alleged because an injunction barring such prosecution would redress McDonough's injury. *See Lujan*, 504 U.S. at 560. Accordingly, McDonough has standing to pursue his claim.

8

public oral communication uttered at a public meeting or any electronic communication.

FLA. STAT. § 934.02 (2016) (emphasis added).

Section 934.02 does not apply to the recording of all oral communications. It is expressly limited to communications "uttered by a person exhibiting an expectation that such communication is not subject to interception . . . ." FLA. STAT. § 934.02 (emphasis added). "Exhibit" means "to show externally," "to display" and "to demonstrate." *See* WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY (3rd ed. 1994) (defining the word "exhibit"). The Florida Legislature's choice of this verb is telling: it required that the expectations of privacy needed to trigger application of the statute must be exhibited; in other words they must be "shown externally" or "demonstrated." The Legislature did not want expectations of privacy to count that remained unexpressed. Consequently, the Legislature imposed a simple requirement that the expectation be "exhibited". At no point did Chief Rolle, or for that matter, any participant in the meeting exhibit any expectation of privacy. Although that easily could have been done, Chief Rolle set no ground rules for the meeting he elected to call. At no point did any one from the HPD suggest that the meeting was confidential or "off the record." Nor was there advance notice or published or displayed rules that established confidentiality and certainly none that prohibited

9

note taking or recordings.  It is therefore clear to us that because Chief Rolle failed to "exhibit" the expectation of privacy that is required by the statute, the government is not entitled to invoke it and McDonough did not violate it.

The recording also falls under an exception carved out in section 934.02 for communications "uttered at a public meeting."  FLA. STAT. § 934.02.  McDonough was a member of the public who attended the meeting at Chief Rolle's invitation. The public nature of this meeting became all the more evident when Chief Rolle allowed Livingston, a second and uninvited member of the public, to attend.  In *Dept. of Ag. & Con. Servs. v. Edwards*, 654 So.2d 628, 632-33 (Fla. 1st DCA 1995), the court found that the fact that several people were present at a meeting rendered any subjective expectation of privacy unreasonable.  Here, there were at least four participants present: two members of the public, and two public officials also attended the meeting in the performance of their official duties.  Moreover, the topic of their meeting was one of acute public interest: citizens discussing allegations of possible police misconduct with the chief of police.  The fact that the content of the meeting would likely be subject to public record disclosure is underscored by the fact that Aquino assured McDonough that "we have all of this recorded, what you stated . . . ." Appendix at 165.

Furthermore, in addition to the fact that an expectation of privacy must be exhibited, the statute also requires that the "circumstances" must "justify [an]

10

expectation" of privacy. FLA. STAT. § 934.02. If no privacy-related ground rules were established in advance of this public meeting, then circumstances that could justify an expectation of privacy do not exist.  This conclusion is firmly grounded in Florida law.  All the attendees were charged with knowledge that the content of their conversation could be subject to public records disclosure laws. *See* FLA. STAT. § 286.011 (2012) (Florida's Government in the Sunshine Law).  As the Florida Supreme Court has emphasized, the "Florida Constitution contemplates that public business is to be conducted in the 'sunshine.'" *Edwards*, at 631; *see also* FLA. CONST. art. II, § 8.  Based on this open-government premise, the facts that all attendees of the meeting were either public employees acting in furtherance of their public duties, or members of the public discussing a matter of public interest, undermines any objective expectation of privacy.

The Florida Supreme Court has interpreted § 934.02 to require "a reasonable expectation of privacy," which includes "one's actual subjective expectation of privacy as well as whether society is prepared to recognize this expectation as reasonable." *State v. Inciarrano*, 473 So.2d 1272, 1275 (Fla. 1985) (citing *Shapiro v. State*, 390 So.2d 344 (Fla. 1980), *cert. denied*, 450 U.S. 982 (1981)) (emphasis in original).  Thus, in *Inciarrano*, a criminal defendant who murdered a victim in an office meeting moved to suppress a recording that the victim made of the meeting.  The Florida Supreme Court held that even though the defendant had a

11

subjective expectation of privacy, there was no reasonable objective expectation of privacy because the meeting took place in an office, which the court noted as having a "quasi-public nature." *Inciarrano*, 473 So.2d at 1274. Other Florida decisions support our conclusion. *See e.g., State v. Smith*, 641 So.2d 849, 852 (Fla. 1994) (no reasonable expectation of privacy where recorded conversation was held in the back of a police car); *Edwards*, 654 So.2d at 632-33 (no reasonable expectation of privacy where the recorded conversation was between three police officers in an office meeting about employment grievances).

## CONCLUSION

We hold that because the recording on February 7, 2014 falls outside of the definition of "oral communication" in section 934.02, McDonough did not violate the statute and it imposes no restriction on his use of the recording he made at that meeting.[3]  For the foregoing reasons, the judgment of the district court is reversed and the matter is remanded to the district court for further proceedings, if necessary, consistent with this opinion.

---

[3] We are not called on to reach the constitutional issue of whether the recording is protected by the First Amendment. *See BellSouth Telecommunications, Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1176 (11th Cir. 2001) (noting the "longstanding principle that federal courts should avoid reaching constitutional questions if there are other grounds upon which a case can be decided.")(citing *Santamorena v. Ga. Military Coll.*, 147 F.3d 1337, 1343 (11th Cir. 1998)).

ED CARNES, Chief Judge, dissenting:

Because James McDonough covertly recorded a conversation with the police chief during a meeting, he received a letter from the State Attorney's Office threatening, in no uncertain terms, to prosecute him for violating Florida's Wiretap Act if he engaged in similar recording activity in the future. Because of the threat, McDonough filed this lawsuit seeking a declaratory judgment that it would violate the First Amendment to prosecute him for covertly recording the chief or other law enforcement authorities in the same or similar circumstances, and also asking for an injunction prohibiting the State Attorney from prosecuting him.

Instead of deciding whether the threatened prosecution violates the First Amendment and the State Attorney should be enjoined, the Court tells McDonough not to worry about it. He shouldn't worry about it because what he did before and wants to do again does not, in the Court's view, violate the Florida Wiretap Act. That will come as news to the State Attorney and to some of us who have read the various (and varied) Florida appellate court decisions interpreting that act.

The Court remands this case to the district court for further proceedings consistent with this opinion "if necessary." McDonough wants to do something that the State Attorney has threatened to prosecute him for doing. There are, I suppose, two possibilities about whether more will be necessary on remand and, if

13

so, what more. One possibility is that the State Attorney will read the opinion and be persuaded by it, apologize for bothering McDonough, and assure him that he can continue to covertly record conversations in circumstances like those that prompted her unfriendly letter to him in the first place.

The second possibility is that the State Attorney will not disavow her intent to prosecute McDonough if he commits this type of conduct again in the future. If that is the situation, McDonough will be back where he started, except that he has been told not to bother this Court with his constitutional claim. The only way for him to get protection from prosecution is for the district court to enjoin the State Attorney from prosecuting him on the ground that this Court has determined that his conduct does not violate Florida law. To conduct further proceedings "consistent with this opinion" the district court will have to declare that McDonough's conduct does not violate the Florida Wiretap Act and enjoin the State Attorney from prosecuting him. Failing to do that would be "[in]consistent with this opinion" and its holding that the conduct in question is not contrary to Florida law.

In order to comply with this Court's remand instructions, the district court will have to do what the Supreme Court has unequivocally held that federal courts cannot do, which is lecture state officials on state law. The reason they cannot do that, the Court has explained, is that: "[I]t is difficult to think of a greater intrusion

14

on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.  Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106, 104 S. Ct. 900, 911 (1984).  This Court has done what Pennhurst instructs us not to do, which is tell the State Attorney "how to conform [her] conduct to state law."  If she prosecutes McDonough for his covert recording activities, this Court says, she will not be conforming her conduct to Florida law.

To avoid deciding a First Amendment issue, the Court violates the Eleventh Amendment.  While federal courts "should avoid reaching constitutional questions if there are other grounds upon which a case can be decided," BellSouth Telecomms., Inc. v. Town of Palm Beach, 252 F.3d 1169, 1176 (11th Cir. 2001), we cannot do so at the Eleventh Amendment's expense, see Pennhurst, 465 U.S. at 121–23, 104 S. Ct. at 919–20 ("[C]onsiderations of policy cannot override the constitutional limitation on the authority of the federal judiciary to adjudicate suits against a State.").  Because of Pennhurst and the principles it espouses, I cannot join the constitutional avoidance effort in this case.  We should, as a Court, reach and decide the First Amendment issue and not instruct Florida officials how they must read the law of that state.

15