[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11060
Non-Argument Calendar
_____

D.C. Docket No. 9:18-cv-80305-WPD


KENNETH WOLINER,

Plaintiff-Appellant,

versus

KRISTEN SUMMERS,
LOUISE WILHITE-ST. LAURENT, et al.,

Defendants,

MARTHA SOFRONSKY,

Defendant-Appellee.


_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(December 18, 2019)

Before WILSON, HULL, and MARCUS, Circuit Judges.

PER CURIAM:

This is an unlawful-recording case. The appellant Kenneth Woliner is a formerly licensed medical doctor trained in holistic medicine. For about two years, he treated S.S., a young woman diagnosed with Stage 3 Hodgkin Lymphoma who ultimately passed away from her illness.

Sometime after S.S. passed away, S.S's mother, Martha Sofronsky, went to Woliner's office to discuss S.S.'s autopsy report in a posthumous bereavement session. She recorded her conversation with Woliner, allegedly without his knowledge or consent. Florida Department of Health (DOH) officials then used the recording in a proceeding to revoke Woliner's medical license, proving there that Woliner's treatment of S.S. arose to medical malpractice.

After Woliner learned of the recording, he sued Sofronsky and DOH officials for, among other things, violating Florida's unlawful-recording statute (Counts I-IV). The district court ultimately granted summary judgment for Sofronsky and the DOH officials. Woliner now appeals the grant of summary judgment for Sofronsky on Count I only.

After careful review, we hold that there are genuine disputes about the circumstances surrounding Sofronsky's recording. Since these disputes are material to whether Woliner had a reasonable expectation of privacy in the private

2

medical office where he was recorded, we reverse the grant of summary judgment

for Sofronsky on Count I and remand for proceedings consistent with this opinion.

## I.

We review de novo the district court's grant of summary judgment and apply

the same standard used by the district court. *Burton v. Tampa Hous. Auth.*, 271

F.3d 1274, 1276 (11th Cir. 2001). Summary judgment is appropriate only "if the

movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). We view all evidence and factual inferences in the light most favorable to

the non-moving party. *Burton*, 271 F.3d at 1277.

Florida's unlawful-recording act generally prohibits, among other things,

the recording of "oral communication[s]" without the consent of all participants to

the conversation. *See* Fla. Stat. § 934.03(1)(a)–(b). It also prohibits the use or

disclosure of a recorded oral communication if the individual using or disclosing

the recording knew or had reason to know that the recording was unlawful. *See*

Fla. Stat. § 934.03(1)(c)–(d). An "oral communication" is "any oral

communication uttered by a <u>person exhibiting an expectation</u> that such

communication is not subject to interception <u>under circumstances justifying such expectation</u> and does not mean any public oral communication uttered at a public meeting or any electronic communication." Fla. Stat. § 934.02(2) (emphasis added).[1]

The Florida Supreme Court has interpreted this language to mean that a statement is an "oral communication" only if the speaker had "a reasonable expectation of privacy," which includes "one's actual subjective expectation of privacy as well as whether society is prepared to recognize this expectation as reasonable." *McDonough v. Fernandez-Rundle*, 862 F.3d 1314, 1320 (11th Cir. 2017) (citing *State v. Inciarrano*, 473 So. 2d 1272, 1275 (Fla. 1985)), *cert. denied*, 584 U.S. __, 138 S. Ct. 2600 (2018). This is "substantially the same test used in a Fourth Amendment right to privacy analysis." *Stevenson v. State*, 667 So. 2d 410, 412 (Fla. 1st DCA 1996). We thus ask two questions to decide whether a statement is an oral communication: (1) Did the non-consenting party have a subjective expectation of privacy when making the statement? and (2) Was the expectation of privacy one that society is prepared to recognize as reasonable? *See Inciarrano*, 473 So. 2d at 1275.

---

[1] Section 934.10 provides a civil remedy for the person whose oral communication was unlawfully recorded. Fla. Stat. § 934.10. The statute also prohibits the disclosure of unlawfully recorded communications in certain proceedings. Fla. Stat. § 934.06.

Florida law suggests that these factors help guide whether an expectation of privacy was objectively reasonable: (1) the location where the communication took place; (2) the manner in which the communication was made; (3) the nature of the communication; (4) the intent of the speaker asserting Chapter 934 protection at the time the communication was made; (5) the purpose of the communication; (6) the conduct of the speaker; (7) the number of people present; and (8) the contents of the communication. *Brugmann v. State*, 117 So. 3d 39, 49 (Fla. 3d DCA 2013) (Rothenberg, J., dissenting from denial of rehearing en banc).  Florida courts also recognize that conversations "occurring inside an enclosed area or in a secluded area are more likely to be protected . . . ."  *Cinci v. State*, 642 So. 2d 572, 573 (Fla. 4th DCA 1994).  And the Florida Supreme Court has held that a person, in some cases, has a reasonable expectation of privacy inside a medical examination room. *See Jones v. State*, 648 So. 2d 669, 677 (Fla. 1994).

Similarly, the United States Supreme Court has said that one should consider "the intention of the Framers of the Fourth Amendment, the uses to which the individual has put a location, and our societal understanding that certain areas deserve the most scrupulous protection from government invasion." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987).  A majority of the Court has also agreed that, in some cases, a doctor has a reasonable expectation of privacy in his or her private medical office.  *Id.*; *see also Minnesota v. Carter*, 525 U.S. 83, 90–91 (1998)

5

(citing *Ortega* for the proposition that "the Court has held that in some circumstances a worker can claim Fourth Amendment protection over his own workplace").

## II.

Woliner generally alleged two unlawful-recording theories.  First, he claimed that Sofronsky unlawfully recorded him during their bereavement session.  Second, Woliner alleged that Sofronsky and DOH officials had unlawfully disclosed or used the unlawful recording in the license-revocation hearing.

At summary judgment, Sofronsky and DOH officials challenged both theories.  And yet, though the court granted total summary judgment for the defendants, the court seemed to address only the second issue—it did not directly tackle the baseline claim that Sofronsky unlawfully recorded Woliner.

Still, we read one aspect of the court's order as justifying its grant of total summary judgment for Sofronsky.  The court reasoned, in analyzing the second claim, that Woliner could not prove his case at trial because he did not have a reasonable expectation that his conversation with Sofronsky would not be recorded.[2]  This conclusion barred the second claim, as the defendants could not

---

[2] The court did not distinguish between subjective expectation and objective reasonableness, but we note that Sofronsky's briefing did not dispute that Woliner at least subjectively expected that she was not recording him.  In any event, we believe, as explained below, that there are genuine disputes of fact relevant to both the subjective and objective parts of the reasonable-expectation inquiry.

have used or disclosed an unlawful recording if the recording was lawful. And it also inherently decided the first claim: If there was no expectation of privacy, then the recording was lawful, and Sofronsky did not violate Fla. Stat. § 934.03. *See Inciarrano*, 473 So. 2d at 1275. So even though the district court did not spell it out, it ruled for Sofronsky on the first claim because it thought that there was no genuine dispute over whether Woliner had a reasonable expectation of privacy. Thus, the question for us is whether, taking the facts in the light most favorable to Woliner, a reasonable factfinder could conclude that he had a reasonable expectation of privacy. *See Burton*, 271 F.3d at 1276–77. On this record, we believe that answer is yes.

The record, viewed in the light most favorable to Woliner, would support these findings. An obvious cornerstone of medical care is patient confidentiality. To that end, Woliner took great care to ensure that his medical office complied with typical confidentiality standards. He added a privacy sign-in sheet that made it impossible for patients to see the names of earlier patients; a sliding glass window dividing the waiting room from the front office area; privacy computer screens; heavy soundproof doors; extra insulation between the walls; a private checkout room; and a policy that employees keep their cell phones out of sight. Woliner also solely owned the medical condominium where he examined his patients, ensuring total control of the premises.

7

Woliner, on occasion, allowed patients to record their examinations if the exams involved complex information too difficult to write down. But this policy came with restrictions. To validly record an exam, a patient had to pay a $5 recording fee. The patient would also need to inform Woliner of his or her desire to record the exam. Woliner, at the beginning of the recording, would state the names of all participants to the conversation and affirm that all participants consented to the recording. Woliner typically made these recordings on a visible office recording device. And Woliner never condoned recordings that did not follow his typical recording procedure.

As far as anyone other than Sofronsky knew, S.S. and Sofronsky had recorded S.S.'s examinations only three times before the allegedly unlawful recording. Each time, they paid the $5 fee. The recording was made on Woliner's office computer, not a personal recording device. Woliner also obtained consent for each recording from all parties present, including himself. The recording device used was visible, and he began the recording by noting who was in the room.

On the day of the allegedly unlawful recording, Sofronsky hid a recording device in her purse. She entered Woliner's medical condominium and recorded conversations with three of Woliner's employees in the condominium's common areas. Woliner then greeted Sofronsky and invited her back to his private office—

8

a room with a soundproof door and closed curtains. Woliner spoke with Sofronsky there for several hours about her daughter's autopsy report. The sole purpose of Woliner's communication with Sofronsky was to help ease her grief; Woliner did not charge her for the time and did not treat her as a patient. Sofronsky never suggested that she was recording the conversation, never paid the $5 fee, and never asked for Woliner's consent. Woliner was thus unaware that Sofronsky was recording their discussion.

On these facts, a factfinder could conclude that Woliner subjectively believed that he had an expectation of privacy. Indeed, the record reflects that he thought as much, that he never saw a listening device, that Sofronsky never asked that he consent to being recorded, and that Sofronsky never complied with the typical recording procedures. Three of his employees also swore that they never saw Sofronsky with a listening device and never knew that she was recording. This is enough to raise a genuine dispute about the circumstances material to the subjective-expectation element.

Similarly, a factfinder could conclude on these facts that Woliner's belief was objectively reasonable. Woliner is a medical doctor, and the medical profession hinges on confidentiality. Woliner thus took great pains to ensure that conversations with his patients in his medical complex remained confidential, installing heavy soundproofing, mandating confidentiality procedures for his staff,

9

and obtaining sole ownership of the property. A factfinder could therefore conclude that it was reasonable for him to generally expect privacy within his medical condominium, and especially within his private medical office. *See Ortega*, 480 U.S. at 715.

Moving to details of the allegedly unlawful recording, Sofronsky recorded Woliner during a conversation in this private medical office—an office equipped with soundproofing and closed curtains. *See Jones*, 648 So. 2d at 677. Woliner and Sofronsky were the only participants to the closed-door discussion. *See Cinci*, 642 So. 2d at 573. The conversation involved a child's autopsy report—highly sensitive medical material for a parent. *See Brugmann*, 117 So. 3d at 49. And the purpose of the conversation was not to relay complex information about patient treatment, but to assist Sofronsky with her grief. *See id.*

To be sure, Woliner has let patients record him before. But this was not a free-for-all policy; it came with specific guidelines. S.S. and her mother had followed this procedure before. Yet, on this occasion, Sofronsky complied with none of the typical recording procedures, leading Woliner to reasonably conclude that he was not on tape.[3]

---

[3] Sofronsky testified that she and S.S. had recorded Woliner before on a private recording device without following the office recording procedures. But the record also shows that Woliner did not know that Sofronsky had made these private recordings and learned of them for the first time at Sofronsky's deposition. Taking the evidence in the light most favorable to Woliner, a factfinder could find that S.S. and her mother made any unauthorized findings in secret, and so

In sum, given the location, purpose, and nature of the communication, and given that Sofronsky did not comply with typical recording procedure, a factfinder—viewing the record in the light most favorable to Woliner—could conclude that he had an objectively reasonable expectation of privacy in his private medical office. *See id.*[4]

As a result, there remain genuine disputes of material fact relevant to whether Woliner had a reasonable expectation of privacy—a conclusion key to whether his statements are protected under Fla. Stat. § 934.03. For these reasons, we **REVERSE** the district court's grant of summary judgment for Sofronsky on Count I and **REMAND** for proceedings consistent with this opinion.

---

no one could have expected that Sofronsky would record a conversation outside the office-sanctioned recording policy.

[4] Woliner also raises a bevy of supplemental arguments supporting reversal. Because we agree that there remain genuine disputes of material fact, we need not reach these issues. Of course, Woliner may raise these arguments in the district court and remains entitled to appeal after final judgment.